811 So.2d 719 (2002)
WINN-DIXIE STORES, INC., a Florida Corporation, Appellant,
v.
99 CENT STUFFTRAIL PLAZA, LLC, etc., and Metropolitan Life Insurance Company, a foreign corporation, Appellees.
No. 3D01-1643.
District Court of Appeal of Florida, Third District.
February 20, 2002.
Clarification and Rehearing Denied March 27, 2002.
*720 Kaufman, Dickstein & Grunspan and Alan M. Grunspan, Miami, for appellant.
Broad and Cassel and Ronald M. Gache, West Palm Beach; Roth & Scholl and Jeff Roth, for appellee.
Before FLETCHER and SORONDO, JJ., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
Winn-Dixie Stores, Inc., appeals an order granting its Motion for Temporary Injunctive Relief, claiming the relief granted was insufficient.
Winn-Dixie operated a supermarket in the Trail Plaza Shopping Center. Winn-Dixie's lease granted an exclusivity provision, restricting its landlord from permitting other tenants from selling certain products sold by Winn-Dixie. That lease provides in pertinent part:
Landlord covenants and agrees that the Tenant shall have the exclusive right to operate a supermarket in the shopping center * * * Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center * * * for occupancy as a supermarket, grocery store, meat, fish or vegetable market[;] * * * and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant; except the sale of such items is not to exceed the lesser of 500 square feet of sales area or 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business[.] (Emphasis added.)
In 1999, Winn-Dixie's landlord leased approximately 22,000 square feet of space in Trail Plaza to 99 Cent Stuff for the operation of a "megastore." The 99 Cent Stuff lease listed several prohibited uses for the leased premises, including a provision that mirrored the Winn-Dixie exclusive:

*721 Tenant shall not operate its premises in a manner which violates any exclusive rights of any other tenant in the Shopping Center..... In addition to the foregoing, the premises shall not be used for any of the purposes or uses listed in Exhibit C.
* *

EXHIBIT C

PROHIBITED USES
The Premises shall not be used for any of the following purposes or uses:
7. The operation of a supermarket, grocery store, meat, fish or vegetable market, or a business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods, except the sale of such items is not to exceed the lesser of 500 square feet or [sic] sales area of [sic] ten percent (10%) of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business, and except the sale by a restaurant operation of prepared, ready-to-eat food items, either for consumption on or off the premises. (Emphasis added.)
Shortly after 99 Cent Stuff opened, it began selling products which, according to Winn-Dixie, violated the above stated lease provisions. The supermarket complained to its landlord who then sent an agent to inspect. The agent concluded that 99 Cent Stuff was violating its lease. When notified, 99 Cent Stuff's Chief Executive Officer, John Isaac, responded that he would re-merchandise the store. By February 15, 2000, Isaac asserted that the problem had been corrected.
The landlord's agent reinspected, determined a lease violation continued, and issued a second notice.[1] Isaac contacted the agent, arguing that his store was in compliance with its lease. Attempting to comply with the limitation on the sale of "staple or fancy groceries," while at the same time, no doubt, defining the terms at issue in a manner which would least fetter his store's permissible product base, in a feat of entrepreneurial jujitsu, Isaac had gone to the Florida Administrative Code, and from there, he had found a definition of general grocery items in a Tax Information Publication. Isaac concluded that nothing in the store's price range could be considered "fancy". As for the term "staple groceries", he employed the definition used in Tax Information Publication 98A01-08, which amounted to certain non taxable food items. Also, Isaac decided that the lease's "500 square feet" requirement applied only to the combined square footage of the store's display racks, containing the items at issue. According to Isaac, nothing in the lease mandated including the aisle space necessary for a patron to actually view its non taxable food items, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods.
By letter dated April 14, 2000, the landlord's agent advised Winn-Dixie that he had re-inspected the premises, using the definitions proposed by Isaac. Thereafter, in June 2000, Winn-Dixie filed its action seeking injunctive relief, which was followed by its Motion for Temporary Injunctive Relief.
Following several evidentiary hearings, the trial court granted in part the temporary injunction sought against 99 Cent Stuff; the court denied any relief as against the landlord. The trial court ordered that the language at issue should be read to include all food, but no non-food items. Thus, while providing some relief, the court rejected the supermarket's argument *722 that the term "groceries" applied to a multitude of non-food items, such as detergents and paper towels. Also, the court adopted 99 Cent Stuff's conclusion that it was not necessary to include aisle space in the contracts' "500 square feet" limitation.
Parties are bound by the clear words of their agreements and a subsequent interpretation in conflict with the clear meaning cannot be given effect. Unless the document in question contains a glossary of terms requiring a different meaning, see Specialty Restaurants Corp. v. City of Miami, 501 So.2d 101, 102 (Fla. 3d DCA 1987), which is not the case here, to find the plain and ordinary meaning of words, one looks to the dictionary. See Beans v. Chohonis, 740 So.2d 65 (Fla. 3d DCA 1999); City of Miami Beach v. Royal Castle System, Inc., 126 So.2d 595 (Fla. 3d DCA 1961). Groceries are generally defined as `articles of food and other goods sold by a grocer,' and a grocer is defined as `a dealer in staple food stuffs ... and many household supplies (as soap, matches, paper napkins).' Webster's Third New International Dictionary 1001(1986).
Employing this definition, we conclude that the trial court tailored the relief granted too narrowly. The commonly recognized definition of the term groceries includes more than just food. While it may not be easy to pinpoint each item to be considered groceries, that is no reason to ignore a clear and obvious element of the contracts at issue. The supermarket negotiated its lease with the promise that another purveyor of items like soap, matches, paper napkins, and such, would be quite limited in its ability to compete. It has the right to enjoy the benefits of its agreement. Similarly, one can only assume that the 99 Cent Store negotiated its lease with the promise that its sale of items such as soap, matches, paper napkins would be severely limited. To permit the unfettered sale of those items limited by the terms its lease, would create a windfall for that store. The trial court's failure to give the terms at issue their plain and ordinary meaning mandates reversal.
Likewise, the leases at issue provided that the prohibited items would occupy no more than 500 square feet of selling space. Limiting the amount of sales area to just the "footprint" of the actual fixtures is not a reasonable construction of the clause at issue. Shoppers do not arrive by chopper, sending ropes down to hoist up their purchases. Shoppers make their choices while standing in aisles and the 500 square feet provided for in the leases at issue obviously contemplated customers viewing and purchasing products from such aisles. Thus, on remand, the temporary injunctive relief granted should be revised to make clear that the 500 square foot figure includes fixtures and their proportionate aisle space. Because only tenant 99 Cent Stuff can make the ultimate decision what products to stock in its store, we find no error in the trial judge's decision to grant the relief sought as to the tenant only.[2]
Accordingly, the order under review is reversed in part and remanded for further relief as outlined herein.
NOTES
[1] The landlord's agent inspected the premises for foods, but not non-food groceries.
[2] This is not to say the supermarket might not successfully pursue a claim for any damages resulting from any failure of the landlord to comply with the terms of the parties' agreement.