**GOLDEN VOICE TECHNOLOGY TRAINING, L.L.C., Plaintiff,**

v.

**ROCKWELL ELECTRONIC COMMERCE CORPORATION, n/k/a Rockwell FirstPoint Contact Corporations, and Defendant, Counter–Plaintiff**

**Conexant Systems, Inc. Defendant.**

**No. 601CV1036ORL19JGG.**

United States District Court, M.D. Florida, Orlando Division.

March 21, 2003.

Steven Roger Schooley, Holland & Knight, LLP, Orlando, FL, Lee F. Grossman, Gina M. Steele, Rashmi V. Gupta, Mark H. Izraelewicz, Thomas I. Ross, Marshall, Gerstein & Borun, Chicago, IL, for Plaintiff.

Ronald Mark Schirtzer, Michael David Crosbie, Foley & Lardner, Orlando, FL, Richard W. McLaren, Jr., James A.

Scheer, Welsh & Katz, Ltd., Chicago, IL, Richard S. Florsheim, Foley & Lardner, Milwaukee, WI, Larry L. Shatzer, Foley & Lardner, Washington, DC, Chelise Anderson, Foley & Lardner, Milwaukee, WI, for Defendants.

## ORDER

FAWSETT, District Judge.

This case comes before the Court upon the following:

1. Rockwell's Combined Motion for Partial Summary Judgment Interpreting the Prior Settlement Agreement, Statement of Facts, and Memorandum in Support Thereof (Doc. No. 61), with Plaintiff Golden Voice's Response to Rockwell's Motion for Summary Judgment (Doc. No. 82);

2. Plaintiff's Motion for Summary Judgment of Patent Validity and Enforceability (Doc. No. 83), with Rockwell First-Point's and Conexant's Response to Plaintiff's Motion for Summary Judgment (Doc. No. 91);

3. Conexant's Motion for Partial Summary Judgment and Supporting Memorandum (Doc. No. 86), with Plaintiff Golden Voice's Response to Conexant's Motion for Partial Summary Judgment (Doc. No. 96);

4. The Report and Recommendation of the Magistrate Judge (Doc. No. 107), with Defendants' Objection (Doc. No. 108), and Plaintiff's Response (Doc. No. 110).

5. Plaintiff's Motion to Exclude the Testimony of Defendants' Damages Expert, Thomas Dodd (Doc. No. 130) and Defendants' Memorandum in Opposition to Plaintiff's Motion to Exclude the Testimony of Defendants' Damages Expert, Thomas Dodd (Doc. No. 34).

## BACKGROUND

This is a patent infringement suit involving several patents owned by Plaintiff that cover a telephone call answering system. Plaintiff Golden Voice Technology and Training, L.L.C. ("Golden Voice") is the owner of U.S. Patent Nos. 4,623,761, 4,734,930 and 4,697,282 (the "Golden Voice Patents"). The Golden Voice Patents relate to a telephone call answering system that assists an operator in handling incoming calls. Using the patented technology, an operator records and stores one or more frequently used repetitive phrases (e.g., greetings, regulatory statements, disclaimers, transfer phrases), also known as personal announcements, in his or her own voice. When the operator receives an incoming call, he or she can play one of the prerecorded messages, after which the operator remains on-line to talk with the caller or to select and play back additional personal announcements as required. Prerecorded personal announcements relieve the operator of having to orally repeat certain phrases throughout the day. The recorded personal announcement is recorded in the operator's best voice, so it sounds pleasant to every caller throughout the day. Moreover, because the prerecorded message is in the voice of the operator, the caller believes he or she is actually hearing the live operator, and at the same time, the operator is on-line to fully serve the caller.

### The Settlement Agreement

This action stems from a previous lawsuit in this Court between Golden Voice's predecessor, Golden Enterprises, and Rockwell International Corporation ("Rockwell") involving the same Golden Patents. In 1994, Golden Enterprises sued Rockwell over Rockwell's telephone systems known as "Spectrum" and "Galaxy." Both systems included personal announcements but limited the number of announcements that an on-line operator could record to no more than six.

The parties litigated the action for two years and eventually negotiated a Settle-

ment Agreement in April 1996. Docket No. 82, Ex. B ("Settlement Agreement"). The Settlement Agreement incorporated a Consent Judgment, which this Court entered on April 23, 1996. In the Consent Judgment Rockwell admitted that Golden's Patents are valid, enforceable, and infringed by Rockwell's products (*i.e.*, Spectrum and Galaxy). Settlement Agreement at 8, ¶ 4.

Under Paragraph 4 of the Settlement Agreement, Golden Enterprises licensed Rockwell to use the patented technology in its telephone systems "if and only if the number of prerecorded response messages accessible by an operator at any operator position does not exceed six (6)":

> Golden hereby grants a paid-up, worldwide, nonexclusive license (without the right to sublicense) under the Licensed Patents to (a) Rockwell to make, ... use, ... [or] sell ... **Licensed Products** or devices or products which use Licensed Methods, **incorporating a prerecorded response system** for telephone operators, e.g., personal announcements, **if and only if the number of prerecorded response messages *accessible* by an operator at any operator position does not exceed six (6);**

Settlement Agreement at 3 (emphasis added). A prerecorded response system for telephone operators is defined as: a system that embodies the functionality of recording one or more telephone operator response messages and playing back such message or messages to an incoming caller that is within any claim of any of the Licensed Patents. Settlement Agreement at 2 (emphasis added).

Shortly after the entry of the Consent Judgment, Golden Voice purchased all of the assets of Golden Enterprises, Inc. It is undisputed that Golden Voice is the successor in interest to the Settlement Agreement and is the plaintiff in this action. Rockwell also incurred a series of complex corporate restructurings, fractions, dissolutions, mergers, renamings, and other activity. It is undisputed that Rockwell Electronic Commerce Corporation (n/k/a Rockwell FirstPoint Contact Corporation) is a successor in interest to the Settlement Agreement and the proper defendant in this action.

On September 26, 2002, Magistrate Judge Glazebrook held a full evidentiary hearing on the motions for summary judgment. Docket No. 99. At the hearing, the parties agreed that this Court should grant Golden Voice's motion for summary judgment as unopposed. The parties also agreed that the central issue raised by defendants' motions for summary judgment is whether Rockwell's product, Convergence, is a Licensed Product under Paragraph 4 of the Settlement Agreement. The parties also agree that this dispute comes down to an interpretation of the word "accessible" in Paragraph 4 of the Settlement Agreement—*i.e.*, whether Convergence allows the number of prerecorded response messages accessible by an operator to exceed six. If it does, it is not a Licensed Product under Paragraph 4 of the Settlement Agreement, and thus may infringe Golden Voice's Patents.

**Present Suit Against Defendants**

On August 31, 2002, Golden Voice brought this suit against Rockwell for patent infringement. Docket No. 1. On February 21, 2002, Golden Voice filed its first amended complaint. Docket No. 43. On June 18, 2002, Rockwell filed a motion for partial summary judgment, arguing that, as a matter of law, its products do not infringe on Golden Voice's patents because they are licensed products pursuant to the Settlement Agreement. Docket No. 61. Golden Voice, in turn, filed a "response" in opposition, claiming that Rockwell's products are *not* Licensed Products under the Settlement Agreement. Docket No. 82.

On August 2, 2002, with leave from the Court, Golden Voice filed a second amended complaint that simply added Conexant Systems, Inc. ("Conexant") as a defendant. Docket No. 76. Golden Voice alleges that Conexant is responsible for any infringement that took place between November 15, 1996 and December 11, 1998, because during that time period Conexant (or its predecessor) operated the call center business that Golden Voice accuses of selling infringing systems. Docket No. 1 at ¶ 12.

On September 6, 2002, Conexant Systems filed its motion for partial summary judgment, arguing, as did Rockwell, that the alleged infringing products are licensed products under the Settlement Agreement. Docket No. 86. On September 23, 2002, Golden Voice filed a "response" to Conexant's motion. Docket No. 96. Both Rockwell's and Conexant's motions for partial summary judgment were referred to Magistrate Judge Glazebrook for Report and Recommendation. *See* Docket Nos. 66 and 97.

In the meantime, plaintiff Golden Voice also filed a motion for partial summary judgment, asking the Court to find the patents at issue valid and enforceable. Docket No. 83. Golden Voice alleges that, in the 1996 Consent Decree, Rockwell conceded that the Golden Voice Patents are valid and enforceable. On September 13, 2002, defendants filed a response to Golden Voice's motion for partial summary judgment, stating that they have abandoned the defenses relating to whether the Golden Voice Patents are valid and enforceable. Defendants expressly state that they do not oppose entry of an order granting summary judgment to Golden Voice. Docket No. 83 at 2. Golden Voice's motion was referred to the Magistrate Judge for Report and Recommendation. Docket No. 102.

The Magistrate Judge recommended as follows:

1. Defendant Rockwell Electronic's Motion for Partial Summary Judgment Interpreting the Prior Settlement Agreement (Doc. No. 61) should be **DENIED**.

2. Plaintiff's Motion for Summary Judgment of Patent Validity and Enforceability (Doc. No. 83) should be **GRANTED** as unopposed.

3. Defendant Conexant Systems, Inc. Motion for Partial Summary Judgment (Doc. No. 86) should be **DENIED**.

### STANDARD OF REVIEW

A District Court Judge may designate a Magistrate Judge to conduct hearings, including evidentiary hearings, and to submit to the Court proposed findings of fact and recommendations for the disposition of the matter referred. 28 U.S.C. § 636(b)(1)(B). The district court shall make a de novo determination of those portions of the Magistrate Judge's Report and Recommendation to which objection is made. The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. Title 28 § 636(b)(1)(C).

In the instant case the Court has conducted a *de novo* review of the motions for summary judgment with their corresponding responses, the Magistrate Judge's Report and Recommendation, the objections to the Report and Recommendation and responses thereto, as well as all attached exhibits, and the record. After conducting its review, the Court finds that the Magistrate Judge produced a thorough and well-reasoned Report and Recommendation. Defendants' objections are overruled, and the Report and Recommendation, including the findings of fact and conclusion of law, is adopted and affirmed.

Additionally, the Court has reviewed Plaintiff's Motion to Exclude the Testimony of Defendant's Damages Expert, Thom-

as Dodd, (Doc. No. 130) and Defendants' response thereto. Plaintiff's motion is denied for the reasons stated in Defendants' response.

### CONCLUSION

Based on the foregoing the Court rules as follows:

1. The Magistrate Judge's Report and Recommendation (Doc. No. 107) is **AFFIRMED AND ADOPTED IN ALL RESPECTS.**

2. Plaintiff's Motion to Exclude the Testimony of Defendants' Damages Expert, Thomas Dodd, (Doc. No. 130) is **DENIED.**

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motions:

MOTION: DEFENDANT ROCKWELL ELECTRONIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT INTERPRETING THE PRIOR SETTLEMENT AGREEMENT (Doc. No. 61)

FILED: July 18, 2002

THEREON it is **RECOMMENDED** that the motion be **DENIED.**

MOTION: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF PATENT VALIDITY AND ENFORCEABILITY (Doc. No. 83)

FILED: August 23, 2002

THEREON it is **RECOMMENDED** that the motion be **GRANTED** as unopposed.

MOTION: DEFENDANT CONEXANT SYSTEMS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 86)

FILED: September 9, 2002

THEREON it is **RECOMMENDED** that the motion be **DENIED.**

This is a patent infringement suit involving several patents owned by plaintiff, which cover a telephone call answering system. Defendants move for partial summary judgment, arguing that a 1996 Settlement Agreement expressly licenses their use of plaintiff's patented telephone system in their products. For the reasons that follow, this Court disagrees.

## I.  BACKGROUND

### A.  Golden Voice's Patents

Plaintiff Golden Voice Technology and Training, L.L.C. ("Golden Voice") is the owner of U.S. Patent Nos, 4,623,761, 4,734,930, and 4,697,282 (the "Golden Voice Patents"). The Golden Voice Patents relate to a telephone call answering system that assists an operator in handling incoming calls. Using the patented technology, an operator records and stores one or more of their frequently used repetitive phrases (*e.g.*, greetings, regulatory statements, disclaimers, transfer phrases), also known as personal announcements, in his or her own voice. When the operator receives an incoming call, he or she can play one of the prerecorded messages, after which the operator remains on-line to talk with the caller, or to select and play back additional personal announcements as required. Prerecorded personal announcements relieve the operator of having to orally repeat certain phrases throughout the day. The recorded personal announcement is recorded in the operator's best voice, so it sounds pleasant to every caller throughout the day. Moreover, because the prerecorded message is in the voice of the operator, the caller believes he or she is actually hearing the live operator, and at the same time, the operator is on-line to fully serve the caller.

## B. The Settlement Agreement

This action stems from a previous lawsuit in this Court between Golden Voice's predecessor, Golden Enterprises, and Rockwell International Corporation ("Rockwell") involving the same Golden Patents. In 1994, Golden Enterprises sued Rockwell over Rockwell's telephone systems known as "Spectrum" and "Galaxy." Both systems included personal announcements, but limited the number of announcements that an on-line operator could record to no more than six. The parties litigated the action for two years, and eventually negotiated a Settlement Agreement in April 1996. Docket No. 82, Ex. B ("Settlement Agreement"). The Settlement Agreement incorporated a Consent Judgment, which this Court entered on April 23, 1996. In the Consent Judgment Rockwell admitted that Golden's Patents are valid, enforceable, and infringed by Rockwell's products (*i.e.,* Spectrum and Galaxy). Settlement Agreement at 8, ¶ 4.

Under Paragraph 4 of the Settlement Agreement, Golden Enterprises licensed Rockwell to use the patented technology in their telephone systems "if and only if the number of prerecorded response messages accessible by an operator at any operator position does not exceed six (6)":

> Golden hereby grants a paid-up, worldwide, nonexclusive license (without the right to sublicense) under the Licensed Patents to (a) Rockwell to make, ... use, ... [or] sell ... **Licensed Products** or devices or products which use Licensed Methods, **incorporating a prerecorded response system** for telephone operators, e.g., personal announcements, **if and only if the number of prerecorded response messages** *accessible* **by an operator at any operator position does not exceed six (6);**

Settlement Agreement at 3 (emphasis added). A prerecorded response system for telephone operators is defined as:

> a system that embodies the **functionality** of recording one or more telephone operator response messages and playing back such message or messages to an incoming caller that is within any claim of any of the Licensed Patents.

Settlement Agreement at 2 (emphasis added).

Shortly after the entry of the Consent Judgment, Golden Voice purchased all of the assets of Golden Enterprises, Inc. It is undisputed that Golden Voice is the successor in interest to the Settlement Agreement and is the plaintiff in this action. Rockwell also incurred a series of complex corporate restructurings, fractions, dissolutions, mergers, renamings, and other activity. It is undisputed that Rockwell Electronic Commerce Corporation (n/k/a Rockwell FirstPoint Contact Corporation) is a successor in interest to the Settlement Agreement and the proper defendant in this action. All of the Rockwell entities are collectively referred to in this report and recommendation as "Rockwell."

## C. Present Suit Against Defendants

On August 31, 2002, Golden Voice brought this suit against Rockwell for patent infringement. Docket No. 1. On February 21, 2002, Golden Voice filed its first amended complaint. Docket No. 43. On June 18, 2002, Rockwell filed a motion for partial summary judgment, arguing that, as a matter of law, its products do not infringe on Golden Voice's patents because they are licensed products pursuant to the Settlement Agreement. Docket No. 61. Golden Voice, in turn, filed a "response" in opposition, claiming that Rockwell's products are *not* Licensed Products under the Settlement Agreement. Docket No. 82.

On August 2, 2002, with leave from the Court, Golden Voice filed a second amended complaint that simply added Conexant Systems, Inc. ("Conexant") as a defendant. Docket No. 76. Golden Voice alleges that Conexant is responsible for any infringement that took place between November 15, 1996 and December 11, 1998, because during that time period Conexant (or its predecessor) operated the call center business that Golden Voice accuses of selling infringing systems. Docket No. 1 at ¶ 12.

On September 6, 2002, Conexant Systems filed its motion for partial summary judgment, arguing, as did Rockwell, that the alleged infringing products are licensed products under the Settlement Agreement. Docket No. 86. On September 23, 2002, Golden Voice filed a "response" to Conexant's motion. Docket No. 96. The Honorable Patricia C. Fawsett referred both Rockwell's and Conexant's motions for partial summary judgment to the undersigned for report and recommendation. *See* Docket Nos. 66 and 97.

In the meantime, plaintiff Golden Voice also filed a motion for partial summary judgment, asking the Court to find the patents at issue valid and enforceable. Docket No. 83. Golden Voice alleges that, in the 1996 Consent Decree, Rockwell conceded that the Golden Voice Patents are valid and enforceable. On September 13, 2002, defendants filed a response to Golden Voice's motion for partial summary judgment, stating that they have abandoned the defenses relating to whether the Golden Voice Patents are valid and enforceable. Defendants expressly state that they do not oppose entry of an order granting summary judgment to Golden Voice. Docket No. 83 at 2. Judge Fawsett referred Golden Voice's motion to the undersigned for report and recommendation. Docket No. 102.

On September 26, 2002, this Court held a full evidentiary hearing on the motions for summary judgment. Docket No. 99. At the hearing, the parties agreed that this Court should grant Golden Voice's motion for summary judgment as unopposed. The parties also agreed that the central issue raised by defendants' motions for summary judgment is whether Rockwell's product, Convergence, is a Licensed Product under Paragraph 4 of the Settlement Agreement. The parties also agree that this dispute comes down to an interpretation of the word "accessible" in Paragraph 4 of the Settlement Agreement—*i.e.,* whether Convergence allows the number of prerecorded response messages accessible by an operator to exceed six. If it does, it is not a Licensed Product under Paragraph 4 of the Settlement Agreement, and thus may infringe Golden Voice's Patents.

## II. *THE LAW*

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without support-

ing affidavits, and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III. *DISCUSSION*

### A. The Plain And Ordinary Meaning Of The Word "Accessible"

The parties agree that the Court is to interpret the Settlement Agreement, as a matter of law, under Florida contract law. The parties further agree that the words in the Settlement Agreement, and specifically the words in Paragraph 4 are neither vague nor ambiguous, and thus are to be given their "plain and ordinary meaning." *See Interspiro USA v. Figgie Int'l,* 18 F.3d 927, 931 (Fed.Cir.1994); *American Medical Int'l v. Scheller,* 462 So.2d 1, 7 (Fla. 4th DCA 1984); *Quesada v. Director, Federal Emergency Management Agency,* 577 F.Supp. 695, 697 (S.D.Fla.1983).

To determine the plain and ordinary meaning of the word "accessible," one looks to the dictionary. *Winn–Dixie Stores, Inc. v. 99 Cent Stuff–Trail Plaza, LLC,* 811 So.2d 719, 722 (Fla. 3rd DCA 2002) (using *Webster's Third New International Dictionary* ); *Burns v. Barfield,* 732 So.2d 1202, 1205 (Fla. 4th DCA 1999) (using *Webster's Third International Dictionary* ). Using a universally accepted dictionary, the word "**accessible**" is defined as "**capable of being used; capable of being reached or usable for access**" and defines "**access**" as "**able to enter.**" *Webster's Ninth New Collegiate Dictionary* (1990). Docket No. 82, Ex. D at 4. This definition incorporates all the functions

necessary to implement any Personal Announcement feature, namely the abilities to enter the message scripts and then to record, listen to and ultimately play back those recorded messages to callers. Indeed, the Settlement Agreement makes clear that the "prerecorded response system for telephone operators" means a system that embodies the functionality of recording one or more telephone operator response messages and playing back such messages. *See* Settlement Agreement at 2.

Using the definition of the word "accessible" in Paragraph 4 of the Settlement Agreement, results in the following:

Golden hereby grants a paid-up, worldwide, nonexclusive license ... under the Licensed Patents ... **if and only if the number of prerecorded response messages "capable of being entered, used or reached, listened to and/or played back"** [substituted for accessible] **by an operator at any operator position does not exceed six (6) ...**

"Capable" is defined as **"having attributes (as physical or mental power) required for performance or accomplishment"** or **"having traits conducive to or features permitting."** Webster's Ninth New Collegiate Dictionary 203 (1990). Docket No. 96, Ex. J at 4. Thus, if the number of prerecorded response messages **capable** (having traits conducive to or features permitting) of being entered, recorded, listened to and/or played back by an operator at any operation position exceeds six, Convergence is not a Licensed Product under Paragraph 4 of the Settlement Agreement.

Rockwell refers to two versions of Convergence—Convergence 3.10 as the most recent version and Convergence 3.7 as the

previous version. Rockwell does not mention versions 1.0—3.6 or 3.8—3.9. Thus, this Court refers to all versions prior to Convergence 3.10 as "earlier versions of Convergence." This Court first examines the earlier versions of Convergence, and then examines Convergence 3.10, to determine whether Rockwell's Convergence products are Licensed Products under the Settlement Agreement.[1]

### B. Earlier Versions of Convergence (Prior To Convergence 3.10)

■ It is undisputed that earlier versions of Convergence had more than six response messages that "were capable of being entered, used or reached," and thus, accessible by an operator. Specifically, consistent with the dictionary definition, Rockwell admits that "[e]arlier versions of Convergence software **were capable of** being programmed to allow the use of more than six prerecorded response messages if the requirements for appropriate hardware and appropriate programming were met." Docket No. 61 at 5–6.

Rockwell further admits that "agent stations at which earlier versions [prior to 3.10] were installed **could have been** programmed to allow access to more than six prerecorded response messages if the stations included the necessary hardware and if the necessary programming were supplied...." Docket No. 61 at 10. Rockwell admits that the earlier versions of Convergence "were capable of being programmed" and "could have been programmed" to allow an operator to use more than six messages. By definition, earlier versions of Convergence had more than six messages that were capable of being used, and therefore accessible by an

---

**1.** Like Rockwell, defendant Conexant argues that Rockwell's Convergence products are Licensed Products under the Settlement Agreement. Because Conexant's arguments are identical to those of Rockwell, this Court's analysis of Rockwell's arguments applies equally to Conexant.

operator. This is fully consistent with Rockwell's 1999 advertisement of Convergence which represented to the public that the user could use "unlimited personal announcements:"

> Even greater agent productivity can be obtained with the Convergence Desktop Solutions products.... [F]eatures included **unlimited personal announcements**, selected call recording, and expert scripting.

Docket No. 82, Ex. C at 4 (emphasis added). It is also consistent with the Rockwell's dealer's handbook, entitled "Dealer's Emblem/Graphic," that teaches dealers to highlight when selling Convergence that "the number of personal announcements is unlimited."[2] Docket No. 82, Ex. E at 2.

Rockwell's admission is also consistent with the Convergence 3.7 "User Guide" which methodically teaches how, by using the keyboard, mouse and clicking on certain icons on the computer screen, an operator creates, records and retrieves a message. Docket No. 82, Ex. F. Nowhere in the User Guide are the number of messages that can be operated, recorded, and retrieved limited to six, or limited to any other number. Chapter 7, Section 7–10 entitled "To Create Manual Announcements" explains how to create announcements, without limiting the number of announcements. Docket No. 82, Ex. F at 8. Chapter 14, Section 14–3 entitled "To Record Greetings and Announcements" explains how the operator records announcements previously entered, without limiting the number of announcements. Docket No. 82, Ex. F at 9. Chapter 12, Section 12–7 entitled "Playing Announcements" explains how the operator may retrieve any one of the announcements, without limiting the number of announcements. Docket No. 82, Ex. F at 10.

Significantly, Rockwell admitted that it recently sent Convergence 3.10 to all of its customers who purchased earlier versions of Convergence in order "to prevent access by an operator to more than six prerecorded messages." Docket No. 61 at 6. In fact, Rockwell admitted in an internal document that the earlier versions of Convergence provided access to more than six messages, and thus needed a "modification" to "avoid infringement:"

> **This modification** [Convergence 3.10] to the current functionality of Convergence [Convergence 3.7] has become necessary due to Intellectual Property that is owned outside of Rockwell. **In order to avoid infringement**, the combination of Spectrum and Convergence Personal Announcements **must be limited to no more than six.**

Docket No. 82, Ex. G (emphasis added).

The undisputed evidence demonstrates that: 1.) pursuant to the dictionary definition of "accessible," earlier versions of Convergence "were capable of" recording, and playing back more than six messages; 2.) Rockwell's advertisement and dealer handbook on Convergence represent that Convergence allowed for "unlimited personal announcements"; 3.) Rockwell's User Guide teaches how to create and play back announcements, without providing any limitation to the number of announcements that can be created and played back; 4.) Rockwell shipped Convergence 3.10 "to prevent operators from accessing more than six messages"; and 5.) Rockwell's internal document states that it modified the earlier versions of Convergence to avoid infringement, presumably, because the earlier versions were not covered by the Settlement Agreement.

---

**2.** In addition to Convergence's unlimited announcements capabilities, Rockwell's Transcend System (n/k/a/ Business Edition 3.0) also provided a virtually unlimited number of recorded announcements—*i.e.,* 999 recorded announcements. Docket No. 96, Ex. K.

In conclusion, the earlier versions of Convergence permitted access to more than six prerecorded response messages. As a matter of law, earlier versions of Convergence are not Licensed Products under the Settlement Agreement. Rockwell attempts to avoid this determination by making a number of arguments that are wholly without merit.

First, Rockwell argues that the majority of its customers never actually recorded and stored *any* messages. Thus, more than six messages were not accessible by an operator. Docket No. 61 at 6—7. Rockwell misses the point. The fact that a customer did not choose to use more than six messages is irrelevant. More than six messages were capable of being recorded and played back, and therefore were accessible. Rockwell's advertisements and dealer's handbook encouraged its customers to use an unlimited number of messages, and, if desired, the customer could have used more than six messages simply by following the instructions in Rockwell's User Guide.

Second, Rockwell alleges that Convergence is a Licensed Product because, without the hardware, the user cannot access more than six messages. This is nonsensical. Software is always useless until it is combined with the necessary hardware. That is why the parties specifically included "software" in the definition of License Products in the Settlement Agreement: " 'Licensed Products' shall mean any products (including software) or devices within any claim of the Licensed Patents." Docket No. 82, Ex. B at 2 ¶ 1.

In any event, Rockwell's Convergence User Guide specifically includes the sound card, coupler and cable under both the "Recommended Hardware Requirements" and the "Minimum Hardware Requirements." Docket No. 82, Ex. F at 4. Moreover, Rockwell's "Reseller Sales" catalog offers the necessary hardware, specifically identifying the coupler (Interface), the sound card and cable. Docket No. 82, Ex. H at 3. Once the hardware is attached, which it always must be in order to use the software, Convergence would be capable of accessing more than six messages. Moreover, Rockwell's argument lacks common sense. According to Rockwell, Golden Voice has licensed Rockwell to sell a system that, once installed, can access more than six messages, so long as Rockwell withholds from shipment a simple component, such as a cable to the customer, that the customer may easily purchase from Radio Shack. Such a senseless interpretation would render the Settlement Agreement void.

Third, Rockwell argues that Convergence is a Licensed Product because accessibility to more than six messages required "programming." Rockwell is wrong. To access an unlimited number of messages, the user simply had to activate certain functions by performing the steps set forth in the User Guide discussed *supra*, with a keyboard, mouse, display icons and microphone. The customer did not have to alter the source code or reprogram in order to enable the computer to be capable of accessing more than six messages. The fact that the Convergence 3.7 User Guide teaches the user how to create a virtually unlimited number of personal announcements shows that Convergence was specifically designed to access more than six messages, and that Rockwell contemplated that it would be done. Docket No. 82, Ex. F at 8. In fact, a selling-feature of Convergence was that it provided unlimited messages. Docket No. 82, Ex. C at 4; Docket No. 82, Ex. E at 2.

As the Federal Circuit explained in *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir.2002) software is "capable" of performing a function, such as allowing an opera-

tor to access more than six messages, even though the user may have to activate the function by performing certain steps, so long as the user does not have to alter the underlying software code.

Software is a set of instructions known as code, that directs a computer to perform specified functions or operations. Thus, the software underlying a computer program that presents a user with the ability to select among a number of different options must be written in such a way as to enable the computer to carry out the functions defined by those options, when they are selected by the user. **Therefore, although a user must activate the functions programmed into a piece of software by selecting those options, the user is only activating means that are already present in the underlying software. Otherwise, the user would be required to alter the code to enable the computer to carry out those functions.** *Id.* at 1118. The earlier versions of Convergence (prior to convergence 3.10) are not Licensed Products under the Settlement Agreement.

### B. Convergence 3.10

Rockwell alleges that Convergence 3.10 is a Licensed Product under the Settlement Agreement, because it only allows an operator to use only one of *four* time-dependent greetings (such as "good morning," "good afternoon," "good evening," or "thank you for calling, but we are closed") in addition to *five* other messages. That is, although there are nine messages which are capable of being recorded and played back by the Convergence software, *i.e.*, nine messages accessible, the four "time" dependant messages are special, and should only count as one. Docket No. 61 at 5, 6, 9 and 10. This is incorrect.

According to Rockwell, the Settlement Agreement should be construed to permit operators to record an entire category of messages, such as time-dependent greetings, and all of the time-dependent messages should be counted as one message because only one of them will be selected as appropriate at any given time. Rockwell seeks to rewrite the term "messages" in Paragraph 4 of the Settlement Agreement to read "categories of messages." Because the Settlement Agreement does not include the term "categories of," Rockwell's interpretation is incorrect as a matter of law. *Quesada,* 577 F.Supp. at 697. It is undisputed that Convergence 3.10 permits nine messages to be accessible by an operator. It is irrelevant that only six messages can be played back at any one specific point in time.

## IV. *CONCLUSION*

For the foregoing reasons, it is **RECOMMENDED** that defendant Rockwell Electronic Commerce Corporation's Motion for Partial Summary Judgment [Docket No. 61] be **DENIED.** It is

**FURTHER RECOMMENDED** that Conexant's Motion for Partial Summary Judgment [Docket No. 86] be **DENIED.** It is

**FURTHER RECOMMENDED** that the Court find, as a matter of law, that: 1.) earlier versions of Convergence (all versions prior to version 3.10) are not Licensed Products under the Settlement Agreement; and 2.) Convergence 3.10 is also not a Licensed Product under the Settlement Agreement. It is

**FURTHER RECOMMENDED** that Golden Voice's Motion for Summary Judgment of Patent Validity and Enforceability [Docket No. 83] be **GRANTED** as unopposed. It is

**FURTHER RECOMMENDED** that this Court find that, as a matter of law, Golden Voice's United States Patent Nos.

4,623,761, 4,734,930, and 4,697,282 are valid and enforceable.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

October 24, 2002.