734 So.2d 1191 (1999)
Paul R. LEVINE, M.D., Stephen M. Zweibach, M.D., Mark R. Davis, M.D., P.A., a dissolved Florida professional association, Appellant,
v.
Paul R. LEVINE, M.D.; Susan W. Levine; Tampa Obstetrics, P.A., a Florida Professional Association; Richard Gordimer, C.P.A.; and Rivero, Gordimer & Company, P.A., Appellees.
No. 98-02296.
District Court of Appeal of Florida, Second District.
July 2, 1999.
*1192 N. Burton Williams, Valrico, for Appellant.
Thomas D. Shults of Hogreve & Shults, Sarasota, for Appellees Paul R. Levine, M.D., Susan W. Levine, and Tampa Obstetrics, P.A.
Stanford R. Solomon and Heather A. Pigman of Solomon & Benedict, P.A., Tampa, for Appellees Richard Gordimer, C.P.A., and Rivero, Gordimer & Company, P.A.
NORTHCUTT, Judge.
This appeal arises from a dispute among the three shareholders in the appellant corporation, a dissolved professional association of physicians. The order under review dismissed with prejudice the corporation's action against one of the shareholders and others. The circuit court held that the other two shareholders had caused the corporation to file the suit after they improperly removed the defendant shareholder from the corporation's board of directors. We conclude that the pleadings and exhibits before us reflect no impropriety in the defendant shareholder's expulsion from the board. Accordingly, we reverse with directions to reinstate the action.

BACKGROUND
The following facts are alleged in the corporation's first amended complaint or reflected in its exhibits. For purposes of the defendants' motions to dismiss and this appeal, they are taken as true.
The corporation, which we refer to as "LZD," ceased to do business in December 1990, and it was administratively dissolved by the Florida Department of State in August 1995. LZD's outstanding shares of common voting stock were owned in equal number by Drs. Paul Levine, Stephen Zweibach, and Mark Davis. Drs. Levine and Zweibach were the corporation's only directors, and Dr. Levine was its president. Dr. Levine's wife, Susan Levine, served as LZD's executive director. Dr. Levine was also the managing shareholder and president of another professional association, Tampa Obstetrics, P.A., and Mrs. Levine also functioned as that corporation's executive director.[1]
*1193 In 1996, the grantors of a note and mortgage given to LZD in 1988 sued for cancellation of the note and mortgage. At the June 1997 final hearing in that action, Dr. and Mrs. Levine testified that in December 1990 Dr. Levine, as president of LZD, had transferred all of LZD's furniture, fixtures, equipment and loans receivable to Tampa Obstetrics. Thereafter, the court hearing that matter rendered judgment declaring, among other things, that the transfer to Tampa Obstetrics was improper.[2]
In November 1997, Drs. Zweibach and Davis, holders of two-thirds of LZD's stock, voted to remove Dr. Levine from the corporation's board of directors and to replace him with Dr. Davis. This newly constituted board of directors then terminated Dr. Levine as LZD's president and caused the corporation to file the lawsuit giving rise to this appeal. These shareholder and director actions were accomplished by Dr. Zweibach's and Dr. Davis's written consent, without formal meetings and without prior notice.

PROCEEDINGS BELOW
LZD filed suit against the Levines and Tampa Obstetrics in January 1998, and shortly thereafter obtained an ex parte temporary injunction directing them to turn over LZD's corporate books and to maintain the assets alleged to have been improperly transferred to Tampa Obstetrics. As a condition to issuance of the injunction, LZD posted a $1,000 cash bond with the clerk of circuit court. On the defendants' motion, the court later ordered the injunction dissolved, at which time it directed the clerk to retain LZD's bond pending the court's determination whether the defendants were entitled to recover attorney's fees, costs or damages as a result of the injunction.
In due course, LZD filed an amended complaint that alleged six counts against five defendants. Count one was a replevin action against Tampa Obstetrics, seeking return of the assets transferred to it by Dr. Levine in December 1990. Count two charged Tampa Obstetrics with conversion of the same assets.
In count three, LZD alleged that between December 1990 and January 1998 Dr. and Mrs. Levine breached their fiduciary duties to the corporation by, among other things, transferring assets to Tampa Obstetrics and allowing that corporation to collect mortgage payments belonging to LZD, failing to properly conduct LZD's financial affairs, and failing to disclose the corporation's true financial condition to its directors and shareholders. Count four was an action against the Levines and Tampa Obstetrics for treble damages pursuant to chapter 772, Florida Statutes (1997).
Count five charged Dr. and Mrs. Levine, along with LZD's certified public accountant, Richard Gordimer, and his firm, Rivero, Gordimer & Company, P.A., with breaching fiduciary duties to the corporation. LZD asserted that these defendants had agreed among themselves to conceal the corporation's true financial condition by preparing and filing false or misleading state and federal tax returns between December 1990 and January 1998. Finally, count six alleged that Gordimer and his firm had committed malpractice during the same period.
All defendants moved to dismiss on several grounds. The circuit court granted their motions and dismissed the action with prejudice because "the Plaintiff did not have standing and did not have the legal basis for filing this lawsuit. Plaintiff did not follow and adhere scrupulously to the statutory condition precedents for the actions taken inasmuch as proper notice was not provided to one of the directors."
*1194 Alternatively, the court ruled that if it was later determined that LZD did have standing to bring the action, count three was dismissed without prejudice for failure to state a cause of action, and the remaining counts were dismissed without prejudice because they were not filed within the applicable statutes of limitations.
Finally, the order dismissing the action directed the clerk of circuit court to release LZD's $1,000 injunction bond to the Levines and Tampa Obstetrics.

DISCUSSION
The defendants maintain that LZD had no right to file the lawsuit because the board of directors that authorized the action was improperly constituted. They argue that Dr. Levine's dismissal as a director was ineffective because it was not done at a noticed meeting of shareholders pursuant to section 607.0808(4), Florida Statutes (1997).[3] That provision of the Florida Business Corporation Act provides:
(4) A director may be removed by the shareholders at a meeting of shareholders, provided the notice of the meeting states that the purpose, or one of the purposes, of the meeting is removal of the director.
LZD contends that because Drs. Zweibach and Davis together held sufficient votes to remove a director from the board, they were authorized to act in writing and without a noticed meeting by section 607.0704, Florida Statutes (1997), which, in pertinent part, states:
(1) Unless otherwise provided in the articles of incorporation, action required or permitted by this act to be taken at an annual or special meeting of shareholders may be taken without a meeting, without prior notice, and without a vote if the action is taken by the holders of outstanding stock of each voting group entitled to vote thereon having not less than the minimum number of votes with respect to each voting group that would be necessary to authorize or take such action at a meeting at which all voting groups and shares entitled to vote thereon were present and voted.
The parties have not directed us to any decision addressing the interplay of these statutes, nor have we found one. But the defendants argue that under principles of statutory construction the general statute permitting shareholders to act by written consent must yield to the specific statutory provision for the removal of directors only at a shareholder meeting that has been noticed for that purpose.
We acknowledge that principle, but conclude that it is inapplicable here. Whenever possible, the meaning of a statute must be gleaned from its plain language. See Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995). Courts may resort to rules of construction to interpret statutes only if the statutes are ambiguous or in conflict. See Starr Tyme, 659 So.2d at 1067. These two statutes are neither. Section 607.0808(4) provides that shareholders may remove a director at a noticed meeting. Section 607.0704(1) creates a mechanism by which shareholders possessing sufficient votes to take an action that is "required or permitted" by the Corporation Act to be taken at a shareholders' meeting may do so without meeting or notice. The two statutes are unambiguous and perfectly compatible; they simply do not conflict.
Moreover, if we were to accept the defendants' proposition we would run afoul of the requirement that we give effect to all of a statute's language. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla.1992). A holding that the written consent statute does not apply whenever a shareholders' *1195 meeting is required by a specific provision of the Corporation Act would negate the statute's plain language making it applicable to actions that are "required or permitted" by the Act to be taken at a meeting. By its terms, section 607.0704 is an exception to the Act's shareholder meeting provisions, not vice versa.
The legislature's intention that the written consent statute is to prevail over specific provisions for shareholder meetings and notice is confirmed by our examination of other portions of the Corporation Act, specifically those relating to dissenters' rights. Each of the statutes addressing corporate action that gives rise to such rights requires shareholder approval of the action, and sets forth specific requirements for shareholder meetings noticed for that purpose.[4] Yet the statute that prescribes the procedure for exercising dissenters' rights expressly contemplates that the corporate action may have been effected by written consent without a shareholders' meeting. See § 607.1320(1)(b), Fla. Stat. (1997).
Drs. Zweibach and Davis properly employed the written consent statute to remove Dr. Levine from LZD's board of directors and elect Dr. Davis to serve in his stead. The new board was properly constituted and empowered to authorize the corporation's lawsuit. Therefore, the circuit court erred when dismissing the suit for lack of standing.
The accountant Gordimer and his firm argue that the dismissal should be affirmed for other reasons. They point out that the circuit court made an alternative ruling that all counts but the third were barred by the statute of limitations. But we conclude that the action was not properly dismissed on that ground, either.
Ordinarily, a statute of limitations may be asserted only in a responsive pleading, as an affirmative defense. It properly may be alleged as grounds for a motion to dismiss only when its application is conclusively established by facts pleaded in the complaint. See Khalaf v. City of Holly Hill, 652 So.2d 1246 (Fla. 5th DCA 1995). Here, the complaint did not conclusively demonstrate the defendants' entitlement to prevail under the statute of limitations, because the alleged circumstances suggested the possibility that LZD could plead matters in avoidance of the limitations defenses. See, e.g., Halkey-Roberts Corp. v. Mackal, 641 So.2d 445 (Fla. 2d DCA 1994). Although the dismissal on this ground was without prejudice, the court more properly should have denied the motions to dismiss, thus leaving it to the defendants to assert limitations defenses in their responsive pleadings and affording LZD an opportunity to plead facts in avoidance. With the issues thus framed by the pleadings, the parties could then develop evidence that would permit disposition of the limitations defenses on motion for summary judgment or at trial. See Alexander Hamilton Corp. v. Leeson, 508 So.2d 513 (Fla. 4th DCA 1987).
Gordimer and company also contend that we must affirm the dismissals as to them under the principle that compels us to approve a correct result even if the lower court has reached it for the wrong reason. See DSA Group, Inc. v. Gonzalez, 555 So.2d 1234 (Fla. 2d DCA 1989). Specifically, the accountants point out that sections 607.1405(1) and 607.1421(3), Florida Statutes (1997), restrict a dissolved corporation's activities. They argue that LZD's suit against them fell outside the *1196 range of permitted activities. We disagree.
Historically, a dissolved corporation could neither maintain nor defend legal actions because upon dissolution the corporation ceased to exist. See Bahl v. Fernandina Contractors, Inc., 423 So.2d 964 (Fla. 1st DCA 1982); Marinelli v. Weaver, 208 So.2d 489, 492 (Fla. 2d DCA 1968). Dissolution of the corporation transferred legal title to its assets to the members of its last board of directors, who held them as trustees on behalf of the corporation's shareholders. See § 607.301, Fla. Stat. (1987); Trueman Fertilizer Co. v. Allison, 81 So.2d 734 (Fla.1955). Provision was made to preserve claims by or against a corporation existing on the date of its dissolution. Section 607.297, Florida Statutes (1987), provided that such claims were not extinguished and could be sued upon so long as the action was commenced by or against the corporation within three years of its dissolution. However, because the dissolved corporation no longer existed as a legal entity, it was incapable of acquiring new claims. See Fedonics West Hollywood Corp. v. Barnett Bank of South Florida, N.A., 450 So.2d 322 (Fla. 4th DCA 1984). It could sue on a cause of action that accrued after its dissolution only if it became reinstated, in which case its "corporate existence" was "deemed to have continued without interruption from the date of dissolution." See § 607.271(5), Fla. Stat. (1987); Capital Const. Services, Inc. v. Rubinson, 541 So.2d 748 (Fla. 3d DCA 1989); LeLac Property Owners' Ass'n v. Routh, 493 So.2d 1131 (Fla. 4th DCA 1986).
In 1989, the legislature substantially altered the foregoing scheme with extensive amendments to Florida's corporation laws, effective July 1, 1990. See ch. 89-154, Laws of Fla. As part of this revision, the lawmakers enacted section 607.1405, Florida Statutes (1989). Contrary to prior law, it provides that a dissolved corporation continues its corporate existence. Further, dissolution of a corporation does not "[p]revent commencement of a proceeding by or against the corporation in its corporate name," or "[a]bate or suspend a proceeding pending by or against the corporation on the effective date of dissolution[.]" § 607.1405(2)(e), (f), Fla. Stat. (1989). Consistent with the dissolved corporation's continued existence as a legal entity with the capacity to sue or be sued in its own name, the Corporation Act no longer provides for the transfer of corporate assets to trustees, nor does it make specific provision for the survival of remedies for three years following dissolution.
Corporate dissolution is not without consequence, however. Section 607.1405(1) declares that a dissolved corporation "may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:
(a) Collecting its assets;
(b) Disposing of its properties that will not be distributed in kind to its shareholders;
(c) Discharging or making provision for discharging its liabilities;
(d) Distributing its remaining property among its shareholders according to their interests; and
(e) Doing every other act necessary to wind up and liquidate its business and affairs."
Gordimer and his firm maintain that the restrictions on doing business set forth in subsection (1) of section 607.1405 limit a dissolved corporation's right to bring suit, as provided in subsection (2). We have found no authority on this issue, one way or the other. But even if a dissolved corporation's right to sue is fettered by the parameters of subsection (1), we believe that LZD's counts against the accountants fell within them. Both counts in part sought redress for conduct occurring prior to the corporation's dissolution. To that extent, LZD's suit to reduce those claims to judgment constituted an appropriate act to wind up and liquidate the corporate affairs.
*1197 As for conduct alleged to have taken place after LZD's dissolution: Whatever may be the limitations, if any, on a dissolved corporation's right to sue, we do not believe they are so severe as to prohibit resort to the courts to protect or vindicate interests associated with the dissolved corporation's legitimate activities. Certainly, engaging accountants was not inconsistent with LZD's status as a dissolved corporation. Notwithstanding the corporation's dissolution, section 607.1405 did not diminish the fiduciary and professional duties owed to LZD by the accountants, nor did it deprive LZD of the right to sue to recover damages caused by the violation of those duties.
Having determined that section 607.1405 would not have justified dismissal of LZD's suit against the accountants, we must examine one other potential impediment to its right to maintain the action. This stems from the fact that LZD was administratively dissolved. The Corporation Act contains specific provisions relative to administratively dissolved corporations. By and large, they are treated no differently than corporations dissolved in other ways. Thus, for example, section 607.1421(3) provides that an administratively dissolved corporation "continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under s. 607.1405...."
The exception derives from section 607.1622(8), Florida Statutes (1997), which declares that any corporation failing to file its annual report with the Department of State
shall not be permitted to maintain or defend any action in any court of this state until such report is filed and all fees and taxes due under this act are paid and shall be subject to dissolution or cancellation of its certificate of authority to do business as provided in this act.
In Cygnet Homes, Inc. v. Kaleny Ltd. of Florida, Inc., 681 So.2d 826 (Fla. 5th DCA 1996), the Fifth District determined that this statute does not prevent an administratively dissolved corporation from suing to collect assets as part of the winding up and liquidation process permitted by section 607.1405(1). We have already stated our conclusion that, insofar as LZD complained of conduct predating the corporation's dissolution, section 607.1405(1) permitted it to sue to reduce its causes of action to judgment.
Arguably, however, section 607.1622(8) would preclude an administratively dissolved corporation's suit on a cause of action accruing after its dissolution. But this would be the case only if the corporation was administratively dissolved for failing to file its annual report. Under section 607.1420(1), Florida Statutes (1997), the Department of State may administratively dissolve a corporation for any of several reasons, including but not limited to its failure to file an annual report. The record in this case fails to disclose the reason for LZD's administrative dissolution. Therefore, section 607.1622(8) would not have justified dismissing its suit. See Diaz v. Parkland Estates, 114 Fla. 273, 154 So. 199 (1934) (holding under predecessor statute that corporation's right to sue was presumed until contrary appeared).
We note that, even if LZD's dissolved status had been a proper basis for dismissing its action, such a dismissal could only have been without prejudice. Under section 607.1422(3), the corporation has the right to become reinstated "at any time." Reinstatement would relate back to the date of dissolution, and the corporation would resume carrying on its business "as if the administrative dissolution had never occurred." Id. Thus, upon reinstatement LZD could proceed on causes of action existing at the time of its dissolution or accruing thereafter. See Babe, Inc. v. Baby's Formula Serv., Inc., 165 So.2d 795 (Fla. 3d DCA 1964) (holding under predecessor statute that corporation could proceed *1198 with suit if it became reinstated prior to dismissal); Triple T., Inc. v. Jaghory, 612 So.2d 642 (Fla. 4th DCA 1993).
In this regard Gordimer and his firm contend that an administratively dissolved corporation cannot become reinstated more than three years after its dissolution. It is true that prior to the 1989 overhaul of the Corporation Act, the Third District held that a dissolved corporation's right to become reinstated and intervene in a lawsuit was confined to the three years during which claims could be brought by or against a dissolved corporation pursuant to former section 607.297. See Haitian Ventures, Inc. v. Wisniewski, 376 So.2d 424 (Fla. 3d DCA 1979). But in a later decision, that court narrowly construed Haitian Ventures. It confirmed that a dissolved corporation could not bring, defend or intervene in an action filed three years after its dissolution. "Once the corporation has been reinstated, however, it may then bring, defend, or intervene in any lawsuit, even one which is based on facts that arose prior to its reinstatement." Cosmopolitan Distribs., Inc. v. Lehnert, 470 So.2d 738, 740 (Fla. 3d DCA 1985) (emphasis supplied). See also Routh, 493 So.2d 1131. Moreover, the basis for the limitation imposed in Haitian Ventures, i.e., the statute providing that claims by or against a corporation survived for three years after its dissolution, was eliminated in the 1989 revision.
We reverse the dismissal of LZD's action and remand with directions to reinstate it, save for count three. LZD has not challenged the alternative ruling dismissing that count without prejudice for failure to state a cause of action. On remand, LZD shall be granted reasonable leave to amend count three.
Last, we reverse the order's direction that the clerk deliver the injunction bond to the Levines and Tampa Obstetrics. The order was entered without notice or hearing, and without proof of the defendants' damages suffered as a result of the temporary injunction.
Reversed and remanded with directions.
ALTENBERND, A.C.J., and CASANUEVA, J., Concur.
NOTES
[1] Dr. Levine's position in Tampa Obstetrics was not alleged in the amended complaint, but is undisputed in the parties' briefs.
[2] For reasons that are immaterial to our decision today, this court recently reversed that judgment insofar as it determined Tampa Obstetrics' rights. See Levine v. Saavedra, 24 Fla. L. Weekly D668, 727 So.2d 1110 (Fla. 2d DCA 1999).
[3] Chapter 607 is applicable to professional associations. See § 621.13(1), Fla. Stat. (1997).
[4] These include sections 607.0902(7) and (8), Florida Statutes (1997), regarding shareholder determination of proposed voting rights attendant to control-share acquisitions; section 607.1103(4), relating to proposed mergers or share exchanges; and section 607.1202(4), regarding sales or exchanges of all or substantially all of corporate assets outside the regular course of business. Dissenters' rights may also be created by the adoption of certain amendments to the articles of incorporation. See § 607.1302(1)(e), Fla. Stat. (1997). Under sections 607.10025 and 607.1003(4), such amendments must be approved by the shareholders at a noticed meeting.