964 So.2d 745 (2007)
R. Lamar WHEELER, Appellant,
v.
WHEELER, ERWIN & FOUNTAIN, P.A., a dissolved Florida professional corporation, and Erwin, Fountain & Jackson, P.A., a Florida professional association, Appellees.
Nos. 1D06-2665, 1D06-4334.
District Court of Appeal of Florida, First District.
August 14, 2007.
Rehearing Denied September 20, 2007.
*746 Earl M. Barker, Jr., of Slott, Barker & Nussbaum, Jacksonville, and Tyrie A. Boyer *747 of Boyer, Tanzler & Sussman, Jacksonville, for Appellant.
Michael J. Korn, and Tonya H. Walker of Korn & Zehmer, P.A., Jacksonville, for Appellees.
WEBSTER, J.
In these two consolidated appeals, appellant seeks review of two final judgments. Because we conclude that the trial court erred when it entered judgment against appellant on his claim seeking payment pursuant to a deferred compensation agreement, we reverse that portion of the first judgment and remand with directions that the trial court enter judgment for appellant on that claim. We also reverse the second judgment, and remand for further proceedings consistent with this opinion on the claims addressed in that judgment.
In 1988, appellant entered into agreements to make his two staff accountants equal shareholders in his public accounting practice, which became known as Wheeler, Erwin & Fountain, P.A. The three contemporaneously executed a Stock Restriction and Retirement Agreement, an Employment Agreement and a Deferred Compensation Agreement. The Stock Restriction and Retirement Agreement provided that, if a stockholder became disabled or died, the other stockholders were obliged to purchase the disabled or dead stockholder's stock. It further provided that, if a stockholder ceased his employment with the firm for any other reason, he was deemed to offer his stock for sale, giving the other stockholders the option either to purchase the stock or to dissolve the firm in accordance with the agreement's terms.
The Deferred Compensation Agreement provided in paragraph 1, entitled "Date of Retirement":
The Employer [appellee Wheeler, Erwin & Fountain, P.A.] agrees that the Employee may retire or withdraw from the employment of the Employer upon delivery to the Employer of written notice of the Employee's intention to retire or withdraw from the employment of the Employer, provided that such written notice shall be given at least ninety (90) days prior to the date of such actual retirement or withdrawal. The date of such actual retirement shall be specified in the written notice and shall hereinafter be referred to as the "Retirement Date."
The agreement further provided in paragraph 2 that, "[u]pon the close of business on the Retirement Date of the Employee, the Employer shall become obligated to pay to the Employee on account of his retirement each month an amount equal to one-sixtieth (1/60) of the Employee's Deferred Compensation Benefit . . . for a period of sixty (60) consecutive months." Paragraph 5 of the agreement provided that "[t]he value of the Deferred Compensation Benefit payable in the event of the retirement . . . of the Employee shall be an amount equal to twenty and 83/100 percent (20.83%) of the gross fees billed and collected by the Employer determined as of the close of the fiscal year immediately preceding . . . the Retirement Date. . . ."
In 1997, a fourth person was admitted as a stockholder, and further contracts were prepared. The Deferred Compensation Agreement was amended to change the percentages used to calculate the deferred compensation benefit, revised employment agreements were executed, and the new firm member acceded to the Stock Restriction and Retirement Agreement. The employment agreements included a nonsolicitation clause which provided, as an exception, that "the Employee may accept employment with, solicit the services *748 of, or seek remuneration from any clients or customers of the Employer where Employee was, as of the date of termination of employment, the billing manager of such client or customer. . . ."
Appellant subsequently delivered a letter to each of the other stockholders which stated:
In view of recent events I have decided that I will retire and withdraw from Wheeler, Erwin & Fountain effective 90 days from the date of this letter or, if you agree, as of October 31, 1999. I believe that recent events have rendered untenable any attempt for me to continue as a member of Wheeler, Erwin & Fountain, P.A. Since I founded the firm and introduced all of you to its practice, acknowledgment of the reality that I no longer can continue in the firm is a profound disappointment to me. I will continue my practice of accountancy in other offices.
The parties eventually agreed that appellant's last day would be November 2, 1999. The next day, appellant opened a new public accounting practice. A few weeks later, appellant received written notice of intent to dissolve Wheeler, Erwin & Fountain pursuant to the Stock Restriction and Retirement Agreement. Soon thereafter, the other three stockholders commenced practicing accounting as Erwin, Fountain & Jackson, P.A.
Appellant subsequently filed suit, alleging (among other things) that Wheeler, Erwin & Fountain, P.A., had breached the Deferred Compensation Agreement by failing to pay him according to its terms; and that Erwin, Fountain & Jackson, P.A., was liable for that breach on a number of theories. Erwin, Fountain & Jackson eventually moved to bifurcate the action; stay discovery as to the claims against it; and proceed to trial on the claim for breach of the Deferred Compensation Agreement only, because the claims against it required that appellant first obtain a judgment against Wheeler, Erwin & Fountain on the breach of contract claim. The trial court granted that motion.
A nonjury trial was held on the claim alleging breach of the Deferred Compensation Agreement. Over objection that the Deferred Compensation Agreement was unambiguous and, therefore, there was no reason to consider parol evidence, the trial court permitted the attorney who had drafted the Deferred Compensation Agreement and the Stock Restriction and Retirement Agreement to testify at length as to the parties' intent regarding those agreements. He testified that the Deferred Compensation Agreement provided for a deferred compensation benefit to be based on the overall value of the firm. The intent was to create a structure in which the value of the firm would be split between the Stock Restriction and Retirement Agreement and the Deferred Compensation Agreement. This provided a tax advantage. No money was actually being put aside to pay deferred compensation. The Deferred Compensation Agreement permitted a party either to "retire" or to "withdraw," with the latter term intended to permit a party the option of continuing the practice of public accounting elsewhere. However, the Stock Restriction and Retirement Agreement contemplated that, if a party elected to leave, the other stockholders would have the option of either remaining in business or dissolving the firm. According to the drafting attorney, the intent was that, if the remaining stockholders elected to dissolve the firm, the Deferred Compensation Agreement would become "moot" because the intent was that deferred compensation would be paid only if the firm elected to remain in business. However, the drafting attorney conceded that the Deferred Compensation *749 Agreement did not expressly make payment of deferred compensation subject to the purchase of a departing shareholder's stock or the continued existence of the firm. On the contrary, the language of that agreement appeared to create an unconditional obligation upon receipt of written notice of an employee's intent to retire or withdraw from employment; and to provide that, if Wheeler, Erwin & Fountain were dissolved, the obligations set out in that agreement would be binding against the dissolved firm.
In a lengthy final judgment in favor of appellee Wheeler, Erwin & Fountain on the breach of contract claim, the trial court first determined that parol evidence had properly been admitted "to enable the Court to interpret the various agreements and to give them their proper and equitable application," apparently on the ground that the Deferred Compensation Agreement contained a latent ambiguity, although the precise nature of that ambiguity was never identified. Based on the parol evidence regarding the supposed intent of the parties when the various agreements were prepared, the trial court further concluded that the parties had intended that, upon retirement or withdrawal by a stockholder, deferred compensation would be payable only if the remaining stockholders elected for the firm to remain in business; if, instead, the remaining stockholders elected to dissolve the firm, no obligation to pay deferred compensation would arise. Accordingly, the trial court entered judgment for Wheeler, Erwin & Fountain on the breach of contract claim. Because it had previously concluded that the claims against Erwin, Fountain & Jackson were essentially derivative of the breach of contract claim, it subsequently entered judgment in favor of that firm on those claims. These consolidated appeals follow.
Appellant contends that the Deferred Compensation Agreement was unambiguous and that, therefore, the trial court erred when it concluded otherwise and permitted parol evidence. According to appellant, construction of the pertinent terms of the Deferred Compensation Agreement compels the conclusion that he was entitled to a judgment in his favor as a matter of law. We agree.
Absent an ambiguity, interpretation of a contract is a question of law to be decided by the court. E.g., Gainesville-Alachua County Reg'l Airport Auth. v. R. Hyden Constr., Inc., 766 So.2d 1238, 1239 (Fla. 1st DCA 2000). Whether an ambiguity exists is also a question of law. E.g., Centennial Mortgage, Inc. v. SG/SC, Ltd., 772 So.2d 564, 565-66 (Fla. 1st DCA 2000). Only when an ambiguity exists requiring resolution by resort to extrinsic evidence is a question of fact presented. E.g., Wagner v. Wagner, 885 So.2d 488, 492 (Fla. 1st DCA 2004). Accordingly, our standard of review as to appellant's contentions regarding construction of the Deferred Compensation Agreement is de novo. See Powertel, Inc. v. Bexley, 743 So.2d 570, 573 (Fla. 1st DCA 1999); Centennial Mortgage, 772 So.2d at 565-66.
"As a general rule, in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." Lee v. Montgomery, 624 So.2d 850, 851 (Fla. 1st DCA 1993). Extrinsic evidence is admissible regarding the intent of parties to a contract only if a latent ambiguity exists. E.g., United States on Behalf of Small Bus. Admin. v. S. Atl. Prod. Credit Ass'n, 606 So.2d 691, 695 (Fla. 1st DCA 1992). "A latent ambiguity arises when a contract on its face appears clear and unambiguous, but fails to specify the rights *750 or duties of the parties in certain situations." E.g., Jenkins v. Eckerd Corp., 913 So.2d 43, 52-53 (Fla. 1st DCA 2005).
Appellant maintains that the Deferred Compensation Agreement unambiguously provides that Wheeler, Erwin & Fountain became unconditionally obligated to pay deferred compensation benefits on appellant's date of retirement, which occurred when appellant withdrew from his employment. Appellees respond that the Deferred Compensation Agreement must be construed together with the Stock Restriction and Retirement Agreement, which provided that, if appellant ceased his employment with Wheeler, Erwin & Fountain other than by death or disability, the remaining stockholders had the option of dissolving the firm rather than buying appellant's stock. According to appellees, this created an ambiguity in the Deferred Compensation Agreement as to whether the firm's obligation to pay deferred compensation benefits survived its dissolution. The trial court agreed with appellees, and relied on extrinsic evidence to conclude that the firm's obligation to pay deferred compensation benefits did not survive its dissolution. This was error.
We conclude that, contrary to the trial court's finding, the Deferred Compensation Agreement does not contain any ambiguity. It clearly states that the firm became obligated to pay appellant deferred compensation "[u]pon the close of business on the Retirement Date of the Employee," which occurred when appellant "retire[d] or withdr[e]w from the employment of the Employer." Nothing in that agreement conditions payment of deferred compensation on appellant's actual retirement from the practice of public accounting. Likewise, nothing in that agreement provides that the firm's obligation to pay deferred compensation would not survive dissolution of the firm as provided in the Stock Restriction and Retirement Agreement. Although silence can create a latent ambiguity in certain circumstances, "[t]he laws which exist at the time and place of the making of a contract enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including those laws which affect its construction, validity, enforcement or discharge." S. Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983). Appellant correctly notes that dissolution of a corporation does not extinguish its debts. At common law, a legal action could not be maintained against a dissolved corporation because it ceased to exist as a legal entity. See Levine v. Levine, 734 So.2d 1191, 1196 (Fla. 2d DCA 1999); Bahl v. Fernandina Contractors, Inc., 423 So.2d 964, 965 (Fla. 1st DCA 1982). However, this rule has been altered in Florida insofar as "[a] dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including . . . [d]ischarging or making provision for discharging its liabilities[.]" § 607.1405(1)(c), Fla. Stat. (1999); Levine, 734 So.2d at 1196. Thus, in the absence of any provision to the contrary, dissolution of the firm did not extinguish its obligation to pay deferred compensation pursuant to the Deferred Compensation Agreement.
Contrary to appellees' contention, the Deferred Compensation Agreement and the Stock Restriction and Retirement Agreement clearly contemplate separate obligations that are subject to different conditions. When appellant withdrew from his employment with the firm, the Deferred Compensation Agreement created an unconditional obligation on the firm's part to pay a deferred compensation benefit, whereas the Stock Restriction and Retirement Agreement gave the remaining stockholders the option either to purchase *751 appellant's stock and remain in business or to dissolve the firm. There is nothing in the agreements, themselves, to support the trial court's conclusion "that it was the stockholders' intent that the Deferred Compensation Agreement was simply a conduit by which [Wheeler, Erwin & Fountain], as an ongoing entity, could make tax deductible payments to a departing stockholder for one-half of the agreed value of the [Wheeler, Erwin & Fountain] stock, with the other one-half coming from the Stock Restriction and Retirement Agreement." Such a conclusion is inconsistent with the concept of "deferred compensation," which means "funds already earned but for which payment is deferred." Ruberg v. Ruberg, 858 So.2d 1147, 1152 (Fla. 2d DCA 2003). See also Black's Law Dictionary 301 (8th ed.2004) (defining "deferred compensation" as "[p]ayment for work performed, to be paid in the future or when some future event occurs").
We are, of course, obliged to construe contract provisions according to their plain and ordinary meaning unless the agreement specifically provides for a different meaning. See Winn-Dixie Stores, Inc. v. 99 Cent Stuff-Trail Plaza, LLC, 811 So.2d 719, 722 (Fla. 3d DCA 2002); Beans v. Chohonis, 740 So.2d 65, 67 (Fla. 3d DCA 1999); Heck v. Parkview Place Homeowners Ass'n, 642 So.2d 1201, 1202 (Fla. 4th DCA 1994). Construing the provisions of the two agreements according to their plain and ordinary meaning, we conclude that there is nothing in either the Deferred Compensation Agreement or the Stock Restriction and Retirement Agreement to indicate that the firm's obligation to pay deferred compensation benefits would be extinguished if the firm were dissolved. Accordingly, we hold that the trial court erred as a matter of law when it found the agreements to be ambiguous regarding the firm's obligation to pay deferred compensation benefits after the firm was dissolved; received parol evidence on the subject; and concluded that the firm's obligation to pay deferred compensation benefits ceased upon its dissolution.
Because the Deferred Compensation Agreement clearly and unambiguously provides that Wheeler, Erwin & Fountain was to become unconditionally obligated to pay deferred compensation benefits on appellant's date of withdrawal from the firm, we reverse that portion of the trial court's first judgment which denied appellant's claim for such benefits (count II of the amended complaint), and remand with directions that the trial court enter judgment for appellant on that claim. Moreover, because counts III through VI of the amended complaint, which sought relief on various theories against Erwin, Fountain & Jackson, P.A., are essentially derivative of count II, we reverse the supplemental final judgment which denied appellant relief as to those claims, and remand those claims for further proceedings consistent with this opinion.
REVERSED and REMANDED, with directions.
LEWIS and THOMAS, JJ., concur.