[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13455

Non-Argument Calendar

_____

SOUTHERN-OWNERS INSURANCE COMPANY,

Plaintiff-Counter Defendant
Appellee,

versus

TASMAN SERVICES LLC,
JAMIE LYNN BAUMGARTNER,

Defendants-Counter Claimants
Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-01510-VMC-TGW

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and GRANT, Circuit Judges.

PER CURIAM:

Tasman Services LLC and Jamie Lynn Baumgartner appeal the summary judgment in favor of Southern-Owners Insurance Company. Southern-Owners obtained a declaratory judgment that it owed no duty to defend or indemnify Tasman in a state negligence action brought by Baumgartner. Tasman and Baumgartner challenge the ruling that the policy's exclusion clause applied because two other insurance policies provided "similar coverage," a phrase that they contend is ambiguous and must be construed in their favor. Because our precedent holds that the "similar coverage" provision at issue is unambiguous and applies when other insurance covers similar types of risks, even if it does not provide similar policy limits, see S.-Owners Ins. Co. v. Easdon Rhodes & Assocs., 872 F.3d 1161, 1170 (11th Cir. 2017), we affirm.

## I. BACKGROUND

Tasman purchased a commercial general liability policy from Southern-Owners, which excluded coverage for bodily injury and property damage arising out of the use of an automobile. Tasman also purchased a commercial general liability plus

endorsement, which expanded coverage to include bodily injury and property damage arising out of the use of an automobile that Tasman does not own and is used in its business. The endorsement policy stated that coverage applied so long as Tasman "do[es] not have any other insurance available to [it] which affords the same or similar coverage." The policy limit was $1 million.

In August 2016, Tasman employee Kasey Mitchell collided head-on with Baumgartner while driving a U-Haul truck leased to Tasman, causing Baumgartner to sustain severe and permanent injuries. At the time of the accident, Mitchell was insured under a GEICO insurance policy, which provided coverage for bodily injury and property damage arising out of her use of an automobile. The GEICO policy limit per occurrence was $20,000 for bodily injury, or $10,000 per person, and $25,000 for property damage. The U-Haul lease agreement also afforded Tasman and any authorized driver with "the minimum limits required by the . . . compulsory insurance law of the jurisdiction in which the accident occurs," which in Florida was $20,000 for bodily injury, or $10,000 per person, and $10,000 for property damage.

Baumgartner sued Mitchell and Tasman in a Florida court and alleged that Tasman was vicariously liable for Mitchell's negligence. Tasman sought a defense and indemnity from Southern-Owners, which agreed to provide a defense under reservation. Southern-Owners then filed a complaint in the district court for a declaratory judgment that it owed no duty to defend or indemnify. Tasman counterclaimed for an opposite declaratory judgment.

Southern-Owners and Tasman both moved for summary judgment. Southern-Owners argued that it had no duty to defend or indemnify because the GEICO policy and the U-Haul agreement constituted "other insurance . . . which afford[ed] . . . similar coverage," so the exclusion clause applied. Southern-Owners argued that this case was indistinguishable from our holding in *Easdon Rhodes* that the "similar coverage" provision, within the same endorsement policy from Southern-Owners, was unambiguous and triggered whenever another policy was available to pay for the same liability claimed. *See Easdon Rhodes*, 872 F.3d at 1170.

Tasman and Baumgartner argued that *Easdon Rhodes* was incorrectly decided and that, because the phrase "similar coverage" was ambiguous, Florida law required it to be construed in favor of coverage. In support, Tasman proffered expert testimony from Jeffrey Posner. According to Posner, interpreting whether different insurance policies offered "similar coverage" required analyzing both the specific insurable risks and the applicable coverage terms, including coverage limits, deductibles, and premiums. Tasman argued that Posner's report was evidence of one reasonable interpretation of "similar coverage" that required the policies at issue to also have similar policy limits. Southern-Owners moved to exclude Posner's report because it provided a legal opinion that conflicted with our decision in *Easdon Rhodes*.

The district court entered summary judgment in favor of Southern-Owners. The district court ruled that, under *Easdon Rhodes*, "similar coverage" unambiguously referred to "the

inclusion of a specific risk in an insurance policy." *Id.* at 1166. The district court ruled that because the GEICO policy, U-Haul agreement, and endorsement policy all covered the same specific insurable risks of bodily injury and property damages, the GEICO policy and U-Haul agreement provided "similar coverage." The district court granted the motion to exclude Posner's expert testimony that "similar coverage" was ambiguous. The district court stated that, because "similar coverage" was unambiguous as a matter of law and there was no issue of fact in dispute that extrinsic evidence would help clarify, Posner's report was unhelpful and could not be used to "manufacture ambiguity."

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Newcomb v. Spring Creek Cooler Inc.*, 926 F.3d 709, 713 (11th Cir. 2019). "We must view all of the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Id.* Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the decision to exclude expert testimony for abuse of discretion. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003).

## III. DISCUSSION

*Eason Rhodes* controls this appeal. Tasman and Baumgartner argue, as the insureds did in *Easdon Rhodes*, that "similar

coverage" is ambiguous and must be construed in its favor. We considered in *Easdon Rhodes* the meaning of "similar coverage" in the context of this same endorsement policy and discerned only one reasonable interpretation—that "similar coverage" unambiguously referred to "another policy . . . [that] is available to pay for the same [or similar] liability claimed under the policy at issue." 872 F.3d at 1168 (alterations in original). We concluded that "the term 'coverage' [was] intended to reference particularized risks included within a policy rather than the entire scope of protection the policy offers." *Id.* at 1166. We explained that, although Florida law requires that ambiguities within a policy be resolved in favor of coverage, "[t]o allow for such a construction, the insurance policy 'must actually be ambiguous.'" *Id.* at 1164 (quoting *Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). For the reasons we articulated in *Easdon Rhodes*, we disagree with Tasman and Baumgartner that "similar coverage" is ambiguous. *See id.* at 1165-70; *United States v. Martinez*, 606 F.3d 1303, 1305 (11th Cir. 2010) ("[U]nder the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court *en banc* or by the Supreme Court.").

Moreover, a Florida intermediate appellate court has approved our reasoning in *Easdon Rhodes* and held that the same endorsement policy did not extend coverage when other insurance was available to cover the same risk. *See Walls v. S. Owners Ins. Co.*, 321 So. 3d 856, 859-60 (Fla. Dist. Ct. App. 2021). As Tasman and Baumgartner acknowledge, when sitting in diversity we are

bound to follow an intermediate Florida appellate court decision unless we conclude that there is persuasive evidence that the Florida Supreme Court would rule otherwise. *See Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2006). But Tasman and Baumgartner have failed to identify persuasive evidence that the Florida Supreme Court would rule otherwise.

Tasman and Baumgartner argue that "similar coverage" plainly means that the comparable policy must provide similar limits, but we have rejected this argument too. *See Easdon Rhodes*, 872 F.3d at 1169-70 ("[The] argument that differences in policy limits between the [auto] policy and the Endorsement indicates the coverages are not similar is likewise unavailing."). We explained that the term "coverage" was used throughout the endorsement in the context of specific types of risk for which coverage was provided. *Id.* at 1166. We reasoned that interpreting "coverage" to refer to the full scope of protection provided by a policy would effectively read out the "any other insurance" phrase and render it "essentially meaningless since only a very specific type of insurance would ever fall within the exclusion clause's purview." *Id.* at 1167. We considered the "substantial discrepancy in cost and policy limit"—that the endorsement cost about $400 less per year than the auto policy, yet the endorsement provided a policy limit 40 times higher—and reasoned that "[s]uch a low price for such expansive coverage is only adequately explained by the presence of an exclusion clause which routinely applies, since the specific risks dealt with by the Endorsement would almost always be covered by

some other auto policy." *Id.* at 1168. We remain "satisfied that the plain meaning of the Endorsement's exclusion clause is concerned only with the *type* rather than *amount* of available 'similar [insurance] coverage.'" *Id.* at 1170 (emphasis added, alteration in original); *see Martinez*, 606 F.3d at 1305.

Tasman and Baumgartner erroneously argue that their proffered expert testimony distinguishes their case from *Easdon Rhodes* by establishing that "similar coverage" is subject to more than one reasonable interpretation, so it should not have been excluded by the district court. Expert testimony is admissible if the expert is qualified to testify competently regarding the matters he intends to address, the methodology by which the expert reaches his conclusions is sufficiently reliable, and the testimony assists the trier of fact to determine a fact in issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993); Fed. R. Civ. P. 702. Under Florida law, construction of an insurance policy is a question of law, as is the issue of whether an ambiguity exists. *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985); *Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So. 2d 745, 749 (Fla. Dist. Ct. App. 2007). The district court did not abuse its discretion in excluding the proffered expert testimony because there was no issue of fact that needed to be resolved. The district court, consistent with our precedent and state law, *Easdon Rhodes*, 872 F.3d at 1165; *Walls*, 321 So. 3d at 859-60, correctly determined that "similar coverage" was unambiguous as a matter of law. Because there was no ambiguity to resolve, the proffered testimony would not assist the

22-13455                Opinion of the Court                9

court in deciding the case. *Daubert*, 509 U.S. at 593; *Williamson Oil*, 346 F.3d at 1298.

## IV. CONCLUSION

We affirm the summary judgment in favor of Southern-Owners.