COBB, Judge.
The appellant, Frank Drane, undertook to purchase an insurance agency from John D. and Marja Gentry for approximately one million dollars. Pursuant to the purchase agreement, Drane executed two promissory notes in favor of the Gentrys for $400,-000.00 and $179,158.00 for the balance due. The transfer date was October 1, 1989. Paragraph four of the purchase agreement was a provision calling for the annual adjustment of the purchase price balance which would reflect the difference in actual annual income from the agency as opposed to expected annual income as represented by the Gentrys. For each $1,000.00 below the expected annual income, the next year’s note installments would decline by $690.00. For each $1,000.00 increase above the expected income, the payments would increase by $300.00. Both notes incorporated the terms of the purchase agreement:
The terms and conditions set forth in the agreement between the payee and maker of this note regarding the sale of Gentry Insurance Agency, Inc., by the payee to the maker are incorporated into the terms of this promissory note and made a part thereof.
On February 26, 1990, the Gentrys borrowed $80,000.00 from Sun Bank and executed a note to that effect. As security for this note, the Gentrys “assigned and delivered to Sun Bank, as collateral for the satisfaction of this promissory note, two promissory notes from Frank C. Drane, made payable to the order of John D. Gentry.” Prior to acceptance of the security interest in the two notes, Sun Bank asked Drane to execute two “estoppel certificates.” Each certificate was a printed form with blanks for the names of parties and amounts. The certificate for the larger note provided:
This estoppel certificate is in reference to that certain negotiable promissory note of Frank Drane Insurance Agency Inc, dated October 5, 1989 in the face amount of $400,000.00, a copy of which is attached hereto as Exhibit “A”. In regard to said note the undersigned does hereby state and certify as follows:
1. That the copy attached hereto of said note is a true, correct and complete copy.
2. That the outstanding balance due on said note is an outstanding principal balance of $374,383.00 together with interest thereon from and after October 1 1989 at the rate specified in said note. Said amounts are to be paid as set forth in said note.
3. That the amounts set forth in paragraph two hereof are absolutely and unconditionally due and owing to the payee and, in the event of assignments to you, to Sun Bank, N.A. and are not subject to any claim, counterclaim, defense or other right of offset.
4. That all payments due or to become due under said promissory note *1124 shall be made directly to you in the event you advise us to do so. No payments shall be made to John D. Gentry without your written consent or authorization.
This estoppel certificate is being made to assist you in taking an assignment of said promissory note.
Dated this 26 day of February, 1990.[1]
Subsequently, the Gentrys defaulted on their loan and on June 27, 1990, Sun Bank notified Drane that all note payments due on or after August 1, 1990, under the two Drane notes, should be sent directly to Sun Bank. On October 11, 1990, Drane determined that nothing was due on either note since the actual income had fallen below the expected annual income, thereby creating a downward adjustment in the installments for the next year of $130,381.71. Because the total of next year’s annual payment on the note was only $123,570.60, Drane asserted that no payments were owed from October 1, 1990 to September 30, 1991.
On December 13, 1990, Sun Bank filed a complaint against the Gentrys and Drane. Count two was an action to foreclose on the security (the two notes) in the stated amount of $579,158.00 and requested the trial court to order the sale of the notes so that the proceeds could be used to meet the Gentry obligation with Sun Bank.
Count three requested a declaratory judgment to the effect that Drane was estopped from raising any defenses regarding his personal obligation on the two notes. Sun Bank maintained that the “third clause” of the estoppel certificates demonstrated Drane’s waiver of any right to assert any defenses against Sun Bank, and further argued that the bank had relied on this in order to loan the $80,000.00 to the Gentrys.
On May 1, 1991, Sun Bank filed a motion for summary final judgment, which was granted by the trial court. The trial court found that the estoppel certificates verified that the $374,383.00 and $179,158.00 were “absolutely and unconditionally due” and not subject to any defense or right of offset. As a result, the court allowed foreclosure of the notes and held that Drane was estopped to raise any defenses. This appeal ensued.
Drane argues that although the amounts listed in the estoppel certificates were due on February 26, 1990, the date he signed the certificates, that fact does not establish the actual amounts due on the promissory notes at some future date of payment. As Drane suggests, this case turns on the meaning of the estoppel certificates. He argues:
Paragraph two of the estoppel certificates states that the outstanding balance due on said notes is to be paid as set forth in said notes. The notes themselves (including the purchase agreement) indicate what would actually be paid, and that was controlled by the purchase agreement, particularly paragraphs four and ten. The only reasonable interpretation to be given that portion of the estoppel certificates is that on February 26, 1990, Drane knew the face amount of the notes, but not how the face amount would be adjusted, either up or down, by, among others, paragraph four and ten of the purchase agreement. That could only be done after October 5th of each year during the terms of the notes.
Drane notes that the pre-printed form estoppel certificates do not state that he •agreed to alter the terms of the notes. He contends the certificates are facially contradictory; first referring to an unconditional amount being due the Gentrys as payees (clearly an incorrect statement), then incorporating the notes which incorporate the purchase agreement — and the latter clearly provides for an adjustment in the amounts due on an annual basis.
As pointed out by Drane’s appellate brief, it is obvious that Sun Bank used pre- *1125 printed forms when it should have adapted the estoppel certificates to fit this particular situation, assuming that it was the bank’s intention to have Drane waive the annual adjustability of the notes. It did not do so in specific language, and case law is well established that contractual provisions are construed most strongly against the drafting party. See, e.g., Hurt v. Leatherby Insurance Company, 380 So.2d 432 (Fla.1980). The inference is clearly available that it was not Drane’s intention to waive adjustability. Furthermore, it is clear that all doubts regarding the existence of an issue in a motion for summary judgment are resolved against the moving party, and all evidence before the court, together with favorable inferences reasonably justified thereby, are to be liberally construed in favor of the opponent. Aagaard-Juergensen, Inc. v. Lettelier, 540 So.2d 224 (Fla. 5th DCA 1989).
The summary final judgment against Frank C. Drane is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
GOSHORN, C.J., and COWART, J., concur.

. The estoppel certificate for the smaller note was identical except for the amounts filled in. The note for the lower figure had not been reduced at the time the certificates were executed, hence showed the sum of $179,158.00 in the introductory paragraph and in paragraph number 2.