912 So.2d 359 (2005)
William LANGFORD, Appellant,
v.
PARAVANT, INC., Appellee.
No. 5D04-1937.
District Court of Appeal of Florida, Fifth District.
October 7, 2005.
*360 Edward C. Tietig, Palm Bay, and Nancy Allen Wegener, Clarksdale, MS, for Appellant.
Steven T. Ball of Holland & Knight, LLP, Orlando, Steven L. Brannock, and Sarah C. Pellenbarg of Holland & Knight, LLP, Tampa, for Appellee.

UPON MOTION FOR CLARIFICATION
PETERSON, J.
Appellant, William Langford, moves for clarification of this court's opinion, filed August 5, 2005, alleging that we did not state with specificity the disposition of the appeal of the trial court's denial of Langford's motion to amend his complaint for an award of punitive damages and the trial court's summary judgment granted to Paravant on Langford's count for fraudulent inducement.
We grant the motion for clarification and substitute the following opinion for that of our August 5, 2005 opinion.
William Langford appeals the trial court's adverse summary final judgment and refusal to allow Langford to file a third amended complaint against Paravant, Inc., his former employer.
In 1995, TRW, Inc. was awarded a military contract to supply equipment for use in the Army's Applique System. Later, TRW submitted a new bid proposal on a different phase of the Army's system, and in 1998 began soliciting bids from vendors interested in subcontracting with TRW to provide certain electronic equipment included in TRW's proposal. Paravant, then a small specialized electronics manufacturer with limited military experience, responded to TRW's Request for Information.
Langford, a retired U.S. Army Colonel having the requisite military background and understanding of the complex governmental bidding and proposal process, was actively recruited by representatives of Paravant to help prepare its bid proposal to TRW. To induce Langford to leave his employment with a large military contractor, Paravant executives offered him an annual base salary of $80,000, plus a commission of 1% on sales of $2,000,001 to 5 million dollars and 2 1/2% on sales of $5,000,001 and higher. Langford accepted the offer and worked for 17 months exclusively on Paravant's bid proposals to TRW, which ultimately resulted in Paravant being awarded a $300,000,000 subcontract with TRW. Notwithstanding, Langford was fired shortly after the contract was awarded because the Vice President of Sales was "disappointed with [Langford's] sales forecast for the coming year." Interestingly, as part of the termination, Paravant offered to pay Langford $30,000 to execute a general release that included a waiver of his right to any commissions. Langford refused Paravant's offer and brought suit instead.
Langford's five count complaint sought damages for breach of contract, quantum meruit, promissory estoppel, fraudulent misrepresentation and an equitable accounting and declaratory decree. Because we find that entry of summary judgment was improper as to the breach of contract claim, we reverse.
Contract interpretation is generally a question of law for the court, rather than a question of fact. E.g., DEC Elec., Inc. v. Raphael Const. Corp., 558 So.2d 427 (Fla.1990). Unless ambiguous, contract language must be given its plain meaning. E.g., Beans v. Chohonis, 740 So.2d 65, 67 (Fla. 3d DCA 1999). However, when the content of an agreement is ambiguous and the parties present different interpretations, the issue of proper interpretation *361 becomes one of fact, precluding summary judgment. E.g., Ieracitano v. Shaw, 815 So.2d 787 (Fla. 4th DCA 2002). Further, where the language of the contract is ambiguous, its provisions should be construed against the drafter. E.g., Ellsworth v. Insurance Co. of North America, 508 So.2d 395, 400 (Fla. 1st DCA 1987).
The terms of Langford's contract indicate that "as compensation for his services" as Business Development Manager, he is entitled to receive a commission based on the amount of revenue generated in "sales."[1] The contract does not define the term "sales," nor does the contract provide that Langford must personally sell a product to receive a commission. Accordingly, the contract contains a latent ambiguity regarding the intent of the parties, which the court may attempt to resolve through consideration of parole evidence. See, e.g., Allett v. Hill, 422 So.2d 1047, 1050 (Fla. 4th DCA 1982) (noting that parole evidence is admissible to determine the intent of the parties where a latent ambiguity exists). The relevant parole evidence contained in the record includes other language contained in the employment contract, documents sent between the parties related to work done under the contract, and the job description. A review of this evidence indicates that a material issue of fact exists with regard to whether the contract was breached.
According to Langford's written job description, he was "responsible for business development activities related to assigned army programs." Further, he was required to "develop a marketing plan to pursue selected army programs, ... execute the plan, maintain contact with the customer, establish customer relations, develop required team agreements, assist in proposals, and keep management informed." It is undisputed that on the first day of his job, Langford traveled to a bidder's conference to meet with representatives from TRW. It is also undisputed that Langford spent every day from his initial date of hire, up to the date the TRW subcontract was awarded to Paravant, working solely on writing, editing and facilitating the submission of proposals to TRW.
First, we note that under the plain meaning of the term "sales," it appears that as a direct result of Langford's efforts, a "sale" occurred. See Merriam Webster's Collegiate Dictionary (10th ed.2004) (defining "sales" as "operations and activities in promoting and selling goods and services"). TRW received the Army contract in part as a result of the proposals submitted by Paravant, which led directly to Paravant receiving the subcontract that generated the first "sale" to TRW. Paravant's argument that Langford's acts were purely ministerial and had no influence on TRW's decision to select Paravant as a subcontractor is strongly refuted by the testimony provided by Paravant's own employees, all of whom initially credited Langford with Paravant's ability to obtain the TRW subcontract.
Further, the trial court did not consider the plain meaning of the term "sales" during the hearing on Paravant's motion for summary judgment. Instead, the court listened to, and apparently accepted Paravant's argument that "in order to be eligible for commission for business development, [Langford] would have to bring in new business from a new customer to Paravant or at a minimum, bring in new business from an existing customer." That argument does not appear to be supported by the documents in the record *362 before us and has the effect of adding a new term to the contract. Although it is true that when a contract contains a latent ambiguity a court may consider parole evidence to divine the intent of the parties, it is equally true that parole evidence may not be used to add to the terms of an otherwise valid contract. See, e.g., Centennial Mortg., Inc. v. SG/SC, Ltd., 772 So.2d 564 (Fla. 1st DCA 2000). Because we can not glean from the record evidence of a written or oral agreement modifying the contract, Paravant's argument cannot support the trial court's conclusion that no material issue remains. The court should have either construed the ambiguity against Paravant, or considered the plain meaning of the term "sales" in view of the work performed by Langford and the testimony contained in the record supporting Langford's position.[2]
Under the above facts, we cannot agree with the trial court that the record is free of conflicting evidence that Langford is not entitled to receive a commission or that Paravant did not breach its contract by failing to pay commissions. The conflicts require resolution by a jury. We partially vacate the summary judgment and remand for a jury trial only on Langford's breach of contract claim. We affirm the remaining portions of the summary judgment.
SUMMARY JUDGMENT PARTIALLY VACATED; REMANDED.
SAWAYA and MONACO, JJ., concur.
NOTES
[1] Langford acknowledges that the only sales commission in dispute is that associated with the Applique Program.
[2] Testimony presented at trial created unresolved issues of fact that preclude entry of summary judgment. For example, both Paravant's former comptroller and Langford's expert witness concluded that based on accepted accounting practices, the entries in Paravant's ledger indicate Paravant's acknowledgment that commissions were owed to Langford. That testimony is supported by the testimony of Paravant Chief Financial Officer during the time Langford was employed, who agreed that the entry in Paravant's commissions ledger entitled "Langford Reserve" indicates that Langford is entitled to receive a commission for his work on the Applique Program.