**LSQ FUNDING GROUP, L.C., Plaintiff,**

v.

**EDS FIELD SERVICES n/k/a HP Enterprise Services, LLC, Defendant.**

**Case No. 6:10–cv–1246–Orl–22DAB.**

United States District Court, M.D. Florida, Orlando Division.

July 10, 2012.

David B. King, Thomas A. Zehnder, Frederick S. Wermuth, Vincent Falcone, III, King, Blackwell, Zehnder & Wermuth, P.A., Orlando, FL, for Plaintiff.

A. Culham, Hewlett Packard Company, Plano, TX, Christopher J.M. Collings, Robert M. Brochin, John Butler Rosenquest, IV, Morgan, Lewis & Bockius, LLP, Miami, FL, for Defendant.

## ORDER

ANNE C. CONWAY, District Judge.

This cause comes before the Court for consideration of the following motions: (1) Plaintiff LSQ Funding Group, L.C.'s Motion for Summary Judgment (Doc. No. 47); (2) Defendant EDS Field Services', now known as HP Enterprise Services, LLC, Motion for Summary Judgment (Doc. No. 49); (3) Plaintiff's Motion to Exclude the Proposed Expert Testimony of Keith R. Ugone (Doc. No. 58); (4) Plaintiff's Motion in Limine (Doc. No. 59); and (5) Defendant's Motion in Limine (Doc. No. 60).

## I. BACKGROUND

Plaintiff is a financial services firm based in Florida whose core business is factoring. (Eliscu Decl. (Doc. No. 47–1) ¶¶ 3, 4.) Plaintiff enters into factoring agreements with its clients, known as vendors, who invoice their customers, known as account debtors, for goods and/or services which the vendors provide to the account debtors. (*Id.* at ¶ 4.) Pursuant to the factoring agreement between Plaintiff and a vendor, the vendor assigns its accounts receivable, or invoices, to Plaintiff. (*Id.*) Plaintiff has the right, but not the obligation, to purchase the vendor's invoices. (*Id.*) If Plaintiff chooses to purchase the vendor's invoices, it collects payment of the invoices directly from the account debtor. (*Id.*) This arrangement

allows the vendor to bridge the cash-flow gap between the time the vendor issues the invoices and the time the invoices are due. (*Id.*)

Defendant provides business and information technology solutions to its customers. (Doc. No. 28 ¶ 3.) Defendant hired Homeland Solutions, Inc. ("Homeland") to install underground cables at various worksites for its customers. (Joint Pretrial Statement, Admitted Facts (Doc. No. 80) ¶ 9.j.) In March 2007, Plaintiff and Homeland entered into a Factoring and Security Agreement (the "Factoring Agreement"). (*Id.* at ¶ 9.k.) Pursuant to the Factoring Agreement, Plaintiff purchased certain Homeland invoices issued to Defendant. (*Id.* at ¶ 9.l.)

When Plaintiff purchased invoices from Homeland, it emailed a copy of the invoices to Bob Gangler, Defendant's Program Manager, to assess the risk associated with, or the collectability of, the invoices. (Doc. No. 47–1 ¶¶ 5, 11.) Gangler was the most knowledgeable person with respect to the work Homeland provided to Defendant. (Gangler Dep. (Doc. No. 44–1) p. 41.) Except for differences in invoice numbers and amounts, in substance Plaintiff's emails stated the following:

Dear Bob Gangler:

This email is written to you ("Customer") on behalf of Vendor [Homeland], and LSQ Funding Group, L.C. ("Assignee") [Plaintiff], as the assignee of all of the Vendor's present and future accounts receivable ("Accounts"). Assignee has the sole right to receive payment and resolve disputes on behalf of the Vendor.

The Vendor has advised us that Customer is indebted to them on invoice(s) [# ] in the amount of [$###,### ] ("Amount Owing"), a copy of which is attached. So that we may continue extending financial accommodations to Vendor in reliance on the invoice, please have an authorized person of the Customer respond to this email affirming the Customer's promise and representation that the (i) invoice will be paid by the Customer to Assignee without recoupment, setoff, defense or counterclaim, including any future defenses or claims and (ii) terms set forth in the invoice are correct. The party responding to this email represents and confirms that said party is authorized by the Customer to respond to and acknowledge this email.

Please note that you are not waiving any present or future claims against the Vendor, but are merely agreeing not to assert those claims against us.

For our mutual benefit, should either of us find it necessary to retain counsel to enforce our rights against the other regarding this Agreement, the prevailing party shall recover its attorney's fees and expenses from the unsuccessful party.

Your response to this email shall be an acceptance and agreement of the terms hereof, and confirmation of the Amount Owing.

(Doc. No. 45–1 pp. 1–2.) Gangler then replied, "Approved, I agree with the below letter." (*Id.*)

Between April 30, 2007 and October 1, 2007, Plaintiff sent Defendant approximately 30 such email exchanges, pursuant to which Defendant paid Plaintiff in full for over 100 Homeland invoices. (Doc. No. 47–1 ¶ 13.) However, in January 2008 Defendant discovered that Homeland submitted 35 fraudulent invoices to Plaintiff be-

tween October 2007 and January 2008, which Plaintiff had purchased. (Doc. No. 80 ¶ 9.m.) These invoices appeared to be for work that had already been performed and for which Defendant had already made payment. (Doc. No. 47–1 ¶ 15.) Plaintiff attached the fraudulent invoices at issue to 20 separate email exchanges. (*Id.* at ¶ 14.)

In April 2008, A. Maxwell Eliscu, Plaintiff's President and CEO, met with Gangler and his supervisor, Herbert Weyh, II, to discuss the fraudulent invoices. (*Id.* at ¶ 16.) The parties agreed at this meeting that Defendant would continue to employ Homeland as a vendor and that Plaintiff would continue to factor Homeland, in order to allow Homeland the opportunity to repay Plaintiff. (*Id.*) Pursuant to this arrangement, Plaintiff collected $263,380 from Homeland. (Doc. No. 80 ¶ 9.r.) After Homeland went out of business in 2010, Plaintiff brought this action against Defendant to recover the face value of the 35 fraudulent invoices, which totals $610,995.09. (Doc. No. 47–1 ¶ 19); (Doc. No. 80 ¶ 9.p).

## II.  LEGAL STANDARD

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). It is the movant who bears the initial burden of "identifying for the district court those portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996) (quotations omitted). Once the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating an issue of material fact. *Fitzpatrick v. City*

*of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citation omitted). In the case in which the nonmovant bears the burden of proof at trial, the movant may carry its initial burden by either negating an essential element of the non-movant's case or by demonstrating the absence of evidence to prove a fact necessary to the non-movant's case. *Id.* at 1115–16.

When analyzing a motion for summary judgment, a court draws all inferences from the evidence in the light most favorable to the non-movant and resolves all reasonable doubt in the non-movant's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.2006). Notwithstanding this inference, "[t]here is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. In the context of cross-motions for summary judgment, the summary judgment standard does not change. *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F.Supp.2d 1295, 1297 (M.D.Fla.2008).

## III.  CROSS–MOTIONS FOR SUMMARY JUDGMENT

### A.  Summary of the Parties' Arguments

In its three-count Amended Complaint, Plaintiff alleges a cause of action for breach of contract, and in the alternative, causes of action for negligent misrepresentation and promissory estoppel. (Doc. No. 15.)

Plaintiff moves for summary judgment on its breach of contract claim and on Defendant's affirmative defenses. (*See* Doc. No. 47.) Plaintiff asserts that the

email exchanges between the parties created enforceable contracts known in the factoring industry as "no-offset agreements," and it seeks to recover the full face value of the fraudulent invoices from Defendant. In response, Defendant contends that Plaintiff does not show that a valid contract exists due to the absence of evidence demonstrating mutual assent. (*See* Doc. No. 66.) Defendant also argues that parol evidence is admissible to prove the failure of a condition precedent to the formation of their agreement. Defendant further contends that even if a contract were formed, it would not obligate Defendant to pay for work that Homeland did not perform. Defendant also asserts that a latent ambiguity in the purported agreements creates an issue of fact. Finally, Defendant argues that if it is found liable for breach of contract, Plaintiff's damages must be reduced by the $263,380 it collected from Homeland.

Defendant moves for summary judgment on Plaintiff's claims for breach of contract, negligent misrepresentation and promissory estoppel. (*See* Doc. No. 49.) With respect to Plaintiff's breach of contract claim, Defendant maintains that the plain language of the email exchanges fails to evidence mutual assent to a term requiring payment for fraudulent invoices. Due to the alleged absence of a term in the contract addressing Defendant's obligation to pay fraudulent invoices, Defendant contends that the Court must construe the agreement against Plaintiff as the drafter. Finally, Defendant argues that no contract exists due to a lack of consideration and mutuality of obligation.

As discussed below, Plaintiff met its initial burden on summary judgment to show that no disputed issue of fact exists and

that it is entitled to judgment as a matter of law. In response, Defendant does not demonstrate the existence of a triable issue of fact. Furthermore, in its motion for summary judgment, Defendant does not show that Plaintiff will be unable to prove its case at trial. Since the facts regarding Defendant's liability for the alleged breach of contract and Plaintiff's damages are undisputed, the Court determines as a matter of law that Defendant is liable for the breach and owes the full face amount of the fraudulent invoices. The Court's conclusion in this regard renders moot Defendant's motion for summary judgment on Plaintiff's alternative claims for negligent misrepresentation and promissory estoppel.

### B. Breach of Contract

■■■ To state a claim for breach of contract, a plaintiff must establish (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir.2009) (applying Florida law).[1] A contract exists in the presence of an offer, acceptance, consideration, and sufficient specification of essential terms. *Id.*

### 1. *Mutual Assent*

■■■ Defendant argues in both its motion for summary judgment and in its response to Plaintiff's motion for summary judgment that Plaintiff cannot prevail on its breach of contract claim because it lacks evidence of mutual assent to a term requiring payment for fraudulent invoices. Mutual assent is an absolute condition precedent to the formation of a contract and without mutual assent, "neither the contract nor any of its provisions come into

---

**1.** The parties agree that Florida law governs.

(Doc. No. 80 ¶ 10.a.)

existence." *See State v. Family Bank of Hallandale,* 623 So.2d 474, 479–80 (Fla. 1993). While a "meeting of the minds" may not be necessary as to every term for a contract to be formed, mutual assent is necessary as to essential terms. *David v. Richman,* 568 So.2d 922, 924 (Fla.1990). "Mutual assent does not mean that two minds must agree on one intention; rather, the formation of a contract depends on the parties having said the same thing, not on their having meant the same thing." *Knowling v. Manavoglu,* 73 So.3d 301, 303 (Fla. 5th DCA 2011). However, the "parties to a contract do not have to deal with every contingency in order to have an enforceable contract." *Robbie v. City of Miami,* 469 So.2d 1384, 1385 (Fla.1985).

Defendant argues that the purported contracts lack an "essential term" as to whether Defendant must pay for fraudulent invoices. However, the emails state that Homeland advised Plaintiff that Defendant was indebted in an "Amount Owing" pursuant to specific invoices, which Plaintiff attached. Plaintiff then instructed Gangler that by responding, he confirmed the "Amount Owing" and that Defendant would pay the invoices "without recoupment, setoff, defense, or counterclaim, including any future defenses or claims."

■ Based on this plain language, the Court agrees with Plaintiff that the agreements unambiguously required Defendant to pay the invoices regardless of any defense, such as Homeland's fraud. Contrary to Defendant's assertion, the purported "essential term" regarding payment of invalid invoices is not missing; rather, it is covered by the parties' agreement. Viewing the evidence in the light most favorable to Defendant, no disputed issue of material fact exists and the Court determines as a matter of law that the parties' agreement evidences mutual assent to all essential terms. Alternatively, viewing the evidence in the light most favorable to Plaintiff, no disputed issue of fact exists and Defendant's motion for summary judgment is due to be denied as a matter of law.

### 2. *Parol Evidence*

In response to Plaintiff's motion for summary judgment, Defendant contends that parol evidence establishes both the absence of mutual assent and that Homeland's provision of the goods and services described on the invoices was a condition precedent to Defendant's agreement to pay. Specifically, Defendant seeks to introduce parol evidence of an alleged precontractual discussion between Gangler and Erika Turja, Plaintiff's Quality Assurance Specialist. According to Gangler, he spoke to Turja when the email exchanges between the parties began and explained that he did not have time to evaluate the Homeland invoices. (Gangler Decl. (Doc. No. 66–4) ¶ 5.) Gangler told Turja that he did not want to enter into, and was not entering into, a contract with Plaintiff by responding to the emails. (*Id.*) Turja and Gangler agreed that Gangler would respond to the emails with Plaintiff's required language—"approved, I agree with the below letter"—to confirm that Homeland was still working for Defendant. (*Id.* at ¶ 7.) However, Gangler informed Turja that his "response was not a commitment to pay and that the emails meant nothing contractual." (*Id.* at ¶ 8.) Without this understanding, Gangler says he would not

have responded to Plaintiff's emails.[2] (*Id.* at ¶ 9.)

The parol evidence rule provides that a written document intended by the parties to be the final embodiment of their agreement may not be contradicted, modified or varied by parol evidence. *See The Florida Bar v. Frederick,* 756 So.2d 79, 84–85 (Fla.2000). "Parol evidence includes a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question." *Duval Motors Co. v. Rogers,* 73 So.3d 261, 265 (Fla. 1st DCA 2011) (citations and quotations omitted). For the parol evidence rule to apply, the written agreement must on its face express an agreement as to all essential terms. *Jenkins v. Eckerd Corp.,* 913 So.2d 43, 53 (Fla. 1st DCA 2005). Generally, the party seeking to introduce parol evidence must establish that the document is ambiguous and in need of interpretation. *King v. Bray,* 867 So.2d 1224, 1226 (Fla. 5th DCA 2004).

Parol evidence is also admissible to show conditions precedent to a contract. *In re Estate of Barry,* 689 So.2d 1186, 1188 (Fla. 4th DCA 1997).

The reason underlying this exception to the parol evidence rule is that oral evidence is generally permitted to be introduced to show that the parties, prior to or at the time they made a written contract of sale, entered into an agreement that such contract of sale should become operative only on the occurrence of a certain condition or contingency, the theory being that such evidence only goes to prove that the instrument never matured as a valid obligation, and hence

there could be no modification or variance or contradiction of it as such.

*Ketchian v. Concannon,* 435 So.2d 394, 395 (Fla. 5th DCA 1983). However, evidence of a condition precedent is not admissible if it contradicts the written terms of the agreement. *Jonat Props., Inc. v. Gateman,* 226 So.2d 703, 706 (Fla. 3d DCA 1969).

Here, Defendant argues that Homeland's provision of the goods and services described on the invoices constituted a condition precedent to Defendant's agreement to pay Plaintiff the amount owing. The condition precedent alleged by Defendant—that it was not obligated to pay the amount owing on the invoices unless Homeland provided the goods or services listed—directly contradicts the plain language of the agreement. Pursuant to the agreement, Defendant unambiguously confirmed that the terms set forth in the invoice were correct and that it would pay the invoice without defense. Since the agreement was not ambiguous, the parol evidence rule also bars admission of the conversation between Gangler and Turja to show the absence of mutual assent. *See Olive v. Tampa Educ. Cable Consortium,* 723 So.2d 883, 884 (Fla. 2nd DCA 1998).

Finally, Defendant points out that the email exchanges do not contain an integration clause affirming the parties' intent to have the parol evidence rule apply. While the existence of a merger or integration clause serves as a persuasive indication that the agreement is totally integrated, *see Jenkins,* 913 So.2d at 53, the absence of an integration clause does not compel the conclusion that parol evi-

---

2. For purposes of its motion for summary judgment, Plaintiff assumes the accuracy of Gangler's recitation of events, since Plaintiff asserts that even if accurate, his testimony is inadmissible. (Doc. No. 75 p. 6.)

dence is admissible where the agreement is complete on its face. Viewing the evidence in the light most favorable to Defendant, the parol evidence rule does not permit the admission of Gangler's conversation with Turja.

### 3. *Consideration*

█ Defendant argues in its motion for summary judgment that the email exchanges fail to create an enforceable contract for lack of consideration. "A promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp. No. 2 v. Schwalier,* 901 So.2d 307, 309 (Fla. 1st DCA 2005).

> The consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee. It is not necessary that a benefit should accrue to the person making the promise. It is sufficient that something of value flows from the person to whom it is made, or that he suffers some prejudice or inconvenience and that the promise is the inducement to the transaction.

*Real Estate World Fla. Commercial, Inc. v. Piemat, Inc.,* 920 So.2d 704, 706 (Fla. 4th DCA 2006). Consideration need not pass directly to the promisor, but may move to either the promisor or a third person. *Id.*

According to Defendant, it bargained only for services from Homeland in exchange for payment. Since Defendant did not receive the services described on the fraudulent invoices, Defendant asserts that no consideration supports its alleged promise to pay Plaintiff for the invoices. In *RF Stakeholders LLC v. McGreevy's Midwest Meat Co. Inc.,* the plaintiff and the defendant entered into no-offset agreements, pursuant to which the plaintiff brought a breach of contract action against the defendant to recover the face amount of three invoices assigned to plaintiff by a third party vendor. No. 10–1107–KHV, 2011 WL 1666914 (D.Kan. May 3, 2011). The defendant confirmed that it received the product referenced on the invoices, but the defendant did not make the purchase orders and did not receive the product. *Id.* at *3. The defendant refused to pay the plaintiff the amount of the invoices, arguing that the contract was not supported by consideration. *Id.* In response, the plaintiff asserted that "the consideration was the resolution of any outstanding disputes regarding the transaction between defendant and [the third-party vendor]." *Id.* Viewing the evidence in the light most favorable to the defendant, the court held as a matter of law that "absent an underlying transaction" between the defendant and the vendor, the plaintiff could not show that consideration supported defendant's alleged agreement to pay the invoices. *Id.*

█ Unlike *RF Stakeholders,* Gangler testified that Defendant benefited from Plaintiff's advancement of funds to Homeland, since Homeland would not have been able to provide services to Defendant otherwise. (Doc. No. 44–1 pp. 102–03.) Moreover, Gangler testified that he affirmatively responded to the email exchanges because he knew that it would be a "big problem" for both Defendant and Homeland if Plaintiff did not advance funds to Homeland on the invoices. (*Id.*) At a minimum, it also suffices that a benefit flowed from Plaintiff to Homeland and that Plaintiff suffered a detriment by extending

funds to Homeland. *See Real Estate World,* 920 So.2d at 706. Finally, the parties' agreements state that the prevailing party in any dispute between them would recover its attorney's fees and expenses, which neither was obligated to do otherwise.[3]

Defendant focuses on the fact that with respect to the fraudulent invoices, Plaintiff did not fund any goods or services which Homeland actually provided to Defendant. However, each of the 20 email exchanges at issue contained both fraudulent and valid invoices. (Doc. No. 49 ¶ 15.) Moreover, Homeland needed Plaintiff's advanced funding to stay in business. *See Brookridge Funding Corp. v. Northwestern Human Servs., Inc.,* 326 Fed.Appx. 10 (2d Cir.2009) (holding that consideration supported a no-offset agreement where the account debtor benefited from the factor's agreement to advance money to the third party vendor, since the funding allowed the vendor to continue performing services). Viewing the evidence in the light most favorable to Plaintiff, the Court finds that the facts are undisputed and the contracts are supported by adequate consideration. Alternatively, viewing the evidence in the light most favorable to Defendant, Plaintiff demonstrates for purposes of its summary judgment motion that consideration supports the parties' agreement.

### 4. *Mutuality of Obligation*

■■■■ In its motion for summary judgment, Defendant argues that the purported agreements are unenforceable due to a lack of mutuality of obligation. A contract which is not mutually enforceable is illusory. *Pan–Am Tobacco Corp. v. Dep't of Corr.,* 471 So.2d 4, 5 (Fla.1985). "Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound." *Id.* However, a lack of mutuality can be cured by the parties' subsequent performance of the contract. *See Flagship Resort Dev. Corp. v. Interval Int'l Inc.,* 28 So.3d 915, 922 (Fla. 3d DCA 2010); *Murry v. Zynyx Mktg. Commc'ns, Inc.,* 774 So.2d 714, 716 & n. 2 (Fla. 3d DCA 2000) ("[T]he so-called requirement of mutuality of obligation is now widely discredited. It is consideration ... that is necessary, not mutuality of obligation."). If consideration supports a contract, then mutuality of obligation is not essential. *La Bonte Precision, Inc. v. LPI Indus. Corp.,* 507 So.2d 1202, 1203 (Fla. 4th DCA 1987).

■■■■ In arguing that the email exchanges suffer from a lack of mutuality of obligation, Defendant points to the fact that Plaintiff did not have an obligation to purchase the invoices even after receiving Gangler's assent. (*See* Eliscu Dep. (Doc. No. 49–1) pp. 110, 149). However, Plaintiff performed under the alleged agreements by purchasing the fraudulent invoices from Homeland after receiving Gangler's response. Furthermore, consideration supported the parties' agreements. Viewing the evidence in the light most favorable to Plaintiff, the facts are undisputed and Defendant's mutuality argument fails. Alternatively, viewing the

---

**3.** Defendant also relies on an Ohio appellate court case in which the court found that no consideration supported the agreement between a factor and account debtor where the third-party vendor did not provide the services described on the invoices purchased by the factor. *See Capital City Fin. Grp., Inc. v. Mac Constr. Inc.,* No. 02CA–E–01–006, 2002 WL 2016332 (Ohio App.Ct. 5th Dist. Aug. 28, 2002). Since the factor did not argue that consideration existed, the court's reasoning in *Capital City* is unpersuasive. *Id.* at *4.

evidence in the light most favorable to Defendant, Plaintiff demonstrates for purposes of its summary judgment motion that the alleged absence of mutuality is not a defense.

### 5. *Defendant's Obligation to Pay Fraudulent Invoices*

Defendant contends in response to Plaintiff's motion for summary judgment that even if a contract was created, the Court cannot reasonably construe the agreement as obligating Defendant to pay for work which Homeland did not perform. Specifically, Defendant argues that each email provided only that Defendant would pay the "invoice" as opposed to the "Amount Owing." Defendant asserts that since the term "invoice" is neither capitalized nor defined by the emails, the Court must apply its plain and ordinary meaning. Defining the term invoice as "an itemized list of goods or services furnished by a seller to a buyer," Defendant contends that the fraudulent invoices do not constitute "invoices" because they do not reflect "goods or services furnished" by Homeland.

However, Plaintiff's emails referenced the invoice numbers and amounts, and Plaintiff attached copies of the invoices. Since the parties' agreement unambiguously defined the term "invoice," the Court need not turn to its dictionary definition. *See BMW of N. Am., Inc. v. Krathen,* 471 So.2d 585, 587 (Fla. 4th DCA 1985) ("When contractual language is clear and unambiguous, courts cannot indulge in construction or interpretation of its plain meaning."). Defendant's argument that it did not agree to pay the "Amount Owing" is also unpersuasive, since Gangler confirmed the amounts stated in each attached invoice and agreed to pay those amounts.

In a similar vein, Defendant argues that the Court cannot reasonably interpret the general waiver of defenses provision, which states that the "invoice will be paid ... without recoupment, setoff, defense or counterclaim," as a guarantee by Defendant to pay a sum certain. Instead, Defendant asserts that it only waived a challenge to the quality of the goods actually shipped or the services actually furnished on the invoice. Furthermore, Defendant contends that the Court cannot reasonably interpret the waiver provision as encompassing fraud.

Defendant relies on two out of circuit cases to show that a general waiver provision like the one at issue does not encompass the defense of fraud. *See Mfrs. Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 317–18 (2d Cir.1993) (holding that a boilerplate "absolute and unconditional" guaranty did not waive a claim of fraudulent inducement against alleged perpetrator of fraud); *Shelby Elec. Co., Inc. v. Forbes,* 205 S.W.3d 448, 456 (Tenn.Ct.App.2005) (holding that a guarantor did not waive the defenses of fraud or fraudulent inducement where the guaranty did not contain specific language to that effect and the guaranty was procured by the creditor's alleged fraud). However, Defendant's reliance on *Yanakas* and *Shelby* is unpersuasive—most notably because the courts in those cases determined that the general waiver provisions did not preclude a guarantor from raising the defense of fraud against the alleged perpetrator of the fraud. Here, there is no evidence that Plaintiff committed a fraud against Defendant.

Defendant also argues that Florida law provides that the drafter of the contract must use specific language to effectuate a waiver of defenses. *See Drane v. Sun*

*Bank, Nat'l Ass'n,* 596 So.2d 1122, 1124 (Fla. 5th DCA 1992). In *Drane,* a debtor executed a note providing for the downward adjustment in installment payments. *Id.* at 1123. The debtor then executed an estoppel certificate incorporating the payment terms of the note, but also providing that the note payments were "not subject to any claim, counterclaim, defense or other right of offset." *Id.* at 1123–24. The court found that these facially contradictory provisions created an ambiguity as to whether the debtor waived the adjustability of the note. *Id.* at 1124–25. In light of this ambiguity, the court construed the conflicting provisions against the bank as the drafter of the estoppel certificate and found a reasonable inference that the debtor did not intend to waive adjustability. *Id.* at 1125.

■ Unlike *Drane,* the emails at issue do not contain a facial contradiction as to whether Defendant waived the defense of fraud, and neither the substance of the emails nor the waiver of defense clause is ambiguous. The court only construes a contract against the drafting party if the contractual language is ambiguous. *See Langford v. Paravant, Inc.,* 912 So.2d 359, 360–61 (Fla. 5th DCA 2005). Otherwise, the court applies the plain meaning of the contract. *Id.* at 360. Viewing the evidence in the light most favorable to Defendant, no disputed issue of fact exists as to Defendant's obligation to pay for the fraudulent invoices.

#### 6. *Latent Ambiguity*

■ Finally, Defendant argues in both its motion for summary judgment and in its response to Plaintiff's motion for summary judgment that the alleged email exchanges contain an ambiguity. A latent ambiguity arises when a contract appears clear and unambiguous on its face but fails to specify the rights or duties of the parties in certain situations.[4] *Wheeler v. Wheeler, Erwin & Fountain, P.A.,* 964 So.2d 745, 749–50 (Fla. 1st DCA 2007). If a latent ambiguity exists, extrinsic evidence is admissible to determine the intent of the parties to a contract. *Id.* at 749. A latent ambiguity creates a question of material fact regarding the correct interpretation of the agreement. *Mac–Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC,* 915 So.2d 657, 659–60 (Fla. 2d DCA 2005). Whether an ambiguity exists is a question of law. *Wheeler,* 964 So.2d at 749.

■ Again, Defendant asserts that a latent ambiguity exists due to the fact that the email exchanges do not state the obligations of the parties in the event that the invoices are fraudulent. In support, Defendant advances two interpretations of the waiver of defense clause, which states that the "invoice will be paid ... without recoupment, setoff, defense or counterclaim." First, Defendant suggests that pursuant to the waiver clause, it agreed to pay Plaintiff for goods and services provided by Homeland without asserting any defense to Homeland's performance. Alternatively, Defendant contends that the Court could interpret the clause as Plaintiff suggests, and find that Defendant agreed to pay Plaintiff even if Homeland did not provide the goods and services described on the invoices.

The Court agrees that the email exchanges encompass Defendant's agree-

---

4. On the other hand, a patent ambiguity appears on the face of the contract and arises from the use of defective, obscure, or insensible language. *Emergency Assocs. of Tampa, P.A. v. Sassano, D.O.,* 664 So.2d 1000, 1002 (Fla. 2nd DCA 1995).

ment not to assert a defense to the manner in which Homeland performed the work described on the invoice. However, "a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Lambert v. Berkley S. Condo. Ass'n, Inc.*, 680 So.2d 588, 590 (Fla. 4th DCA 1996). Since Defendant agreed to pay the Homeland invoices "without ... defense," its interpretation of the waiver provision is overly narrow and therefore unreasonable. After considering the email exchanges as a whole and viewing the evidence in the light most favorable to Defendant, the Court concludes that the parties' agreement is not ambiguous.

Similarly, Defendant argues in its motion for summary judgment that the absence of a term in the contract addressing its obligation to pay Plaintiff must be construed against Plaintiff as the drafter. Viewing the evidence in the light most favorable to Plaintiff, the agreement is not ambiguous and the Court need not construe the contract against Plaintiff. *See Langford*, 912 So.2d at 360–61.

### 7. Conclusion

In sum, after viewing the evidence in the light most favorable to the Defendant, no disputed issue of fact precludes entry of summary judgment in Plaintiff's favor on its claim for breach of contract. Additionally, viewing the evidence in the light most favorable to Plaintiff, Defendant does not show the absence of evidence to support Plaintiff's case or provide affirmative evidence demonstrating that Plaintiff will be unable to prove its case at trial. Therefore, Defendant's motion for summary judgment is due to be denied. Since the Court grants summary judgment in favor of Plaintiff on its breach of contract claim,

it denies as moot Defendant's motion for summary judgment on Plaintiff's alternative claims for negligent misrepresentation and promissory estoppel. Finally, after resolving the issue of Defendant's liability, the Court turns to Plaintiff's damages and Defendant's defenses.

### C. Damages

#### 1. Legal Measure of Damages

In its motion for summary judgment, Plaintiff argues that it is entitled to the full face value of each fraudulent invoice as liquidated damages, plus prejudgment interest and attorney's fees. *See Wiers Farm, Inc. v. Waverly Farms, Inc.*, No. 8:09–cv–1742–T–30TBM, 2011 WL 1296867 (M.D.Fla. Mar. 31, 2011) (awarding as damages the face value of the invoices in a breach of contract action on a no-offset agreement). In response, Defendant contends that allowing Plaintiff to recover the face value of the invoices without deducting the $263,380 paid back by Homeland would place Plaintiff in a better position than if Defendant had fully performed. *See Koplowitz v. Girard*, 658 So.2d 1183, 1184 (Fla. 4th DCA 1995) ("A party can neither receive more than it bargained for nor should it be put in a better position than it would have been in had the contract been properly performed."). According to Plaintiff, however, it properly applied Homeland's payments to the total amount owed by Homeland pursuant to the Factoring Agreement, which included default interest, fees and other invoices in addition to the $610,955.09 claimed by the 35 fraudulent invoices.

Defendant argues that Gangler's declaration, as well as allegations in Plaintiff's Amended Complaint, support a reduction of Plaintiff's damages. In Gangler's sworn declaration, he states the following:

After the fraud was discovered, [Plaintiff] and [Defendant] agreed that Homeland could repay [Plaintiff] for the fraudulent invoices through continued work for [Defendant] by having [Plaintiff] withhold additional amounts from [Defendant's] payments for that work. I believed that the money that [Plaintiff] collected from additional withholdings from [Defendant's] payments would pay back [Plaintiff] for the fraudulent invoices and that these sums would reduce any obligation that [Defendant] allegedly had to pay [Plaintiff] for the fraudulent invoices.

(Doc. No. 66–4 ¶ 13.) However, Gangler's speculative belief regarding how Plaintiff would apply Homeland's payments does not defeat summary judgment, since the personal knowledge requirement of Rule 56(e) precludes statements in affidavits based in part "upon information and belief" from raising genuine issues of fact. *See Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir.2002) ("[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact."). Moreover, the evidence is undisputed that the amounts Homeland owed Plaintiff pursuant to the Factoring Agreement not only included the face amounts of the fraudulent invoices, but also fees, charges, and default interest. (Eliscu Decl. (Doc. No. 47–1) ¶ 16.)

Defendant also points to Plaintiff's Amended Complaint, in which Plaintiff alleges that "by April 2012, Homeland was able to repay [Plaintiff] a total of $136,000 for the fraudulent invoices" and then deducts this amount from the damages it seeks from Defendant.[5] (Doc. No. 15 ¶¶ 16, 17) (emphasis added). Without citing any authority in support, Defendant argues that Plaintiff "concedes" that it collected money from Homeland as repayment for the fraudulent invoices. However, in the Joint Pretrial Statement Plaintiff claimed the full face value of the invoices as damages without a setoff for Homeland's payments. (Doc. No. 80 ¶ 7.a.) *See Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1012 (11th Cir.1982) (noting that the pre-trial statement supersedes the pleadings); Local Rule M.D. Fla. 3.06(e). Additionally, the parties alleged in the Joint Pretrial Statement that "[b]efore Homeland went out of business, Plaintiff collected $263,380 from Defendant's payments for Homeland's future work"—an agreed upon fact which appears to encompass both parties' theory of damages. (Doc. No. 80 ¶ 9.r.) Ultimately, Defendant does not demonstrate that Plaintiff's unsworn allegations in the Amended Complaint create a genuine issue of fact.

Furthermore, Gangler and Weyh both testified that the parties did not discuss how Plaintiff would allocate Homeland's payments. (Gangler Dep. (Doc. No. 44–1) p. 299); (Weyh Dep. (Doc. No. 46–1) pp. 99–100). While Weyh stated that he generally understood that Plaintiff would apply any payments by Homeland to the total outstanding balance, he did not know the total amount Homeland owed Plaintiff. (Doc. No. 46–1 at pp. 99–100). Viewing the evidence in the light most favorable to Defendant, no disputed issue of fact exists as to whether Defendant is entitled to a setoff based on Homeland's payments. (Doc. No. 80 ¶ 9.r.)

5. The parties do not dispute that Homeland paid back $263,380 as opposed to $136,000.

Thus, Plaintiff is entitled to the full face value of the invoices as a matter of law.[6] *See Brookridge Funding Corp. v. Northwestern Human Services Inc.*, 2007 WL 1834175, at *6 (D.Conn. June 26, 2007); *Madison Fin., LLC v. Hunts Point Coop. Mkt., Inc.*, No. 01–3830(WHW), 2008 WL 724362, at *15 (D.N.J. Mar. 17, 2008), *aff'd* 421 Fed.Appx. 153 (3d Cir.2009).

2. *Prejudgment Interest and Attorney's Fees*

■ Plaintiff also argues, and Defendant does not dispute, that it is entitled to recover attorney's fees and prejudgment interest at the statutory rate from the due date referenced on each invoice. "Under Florida law ... the general rule in contract cases is that the prevailing party receives prejudgment interest on its award." *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1297 (11th Cir.2002). The court's decision to award prejudgment interest may depend on equitable considerations, such as whether the prevailing party caused a delay between the injury and the entry of judgment or failed to mitigate its damages. *Id.* at 1297–98.

Here, the Court finds that the equities of the case do not dictate a denial of a prejudgment interest award. However, the Court currently has an insufficient record upon which to award prejudgment interest, or, for that matter, attorney's fees. Accordingly, Plaintiff will be required to submit a memorandum and supporting materials, if necessary, addressing the appropriate prejudgment interest rate to be applied and calculating the total amount of prejudgment interest due, as well as its alleged entitlement to attorney's fees and the amount of such fees.

**D. Defenses**

Plaintiff also moves for summary judgment on each of Defendant's defenses. The Court finds that Plaintiff has shown that Defendant has no evidence supporting Defendant's defenses of mutual mistake, unconscionability, statute of limitations, laches, waiver and mitigation. Similarly, Plaintiff demonstrates the absence of a disputed issue of fact regarding whether Defendant waived the defenses of statute of limitations, laches, waiver, mitigation and setoff pursuant to Defendant's agreement to pay the invoices "without recoupment, setoff, defense or counterclaim, including any future defenses or claims." [7] *See, e.g., Scarborough Assocs. v. Fin. Fed. Sav. & Loan Ass'n of Dade Cnty.*, 647 So.2d 1001, 1003 (Fla. 3d DCA 1994) (enforcing a waiver of defense clause providing that the principal amount of note plus

---

6. The Court also notes that Defendant's expert, Dr. Ugone, opines that Plaintiff's $610,995.09 damages claim should be reduced by a setoff in the amount $61,099.51, representing 10% of the face value of the 35 fraudulent invoices which Plaintiff purportedly held in reserve for Homeland pursuant to the Factoring Agreement, as well as a setoff in the amount of $263,380. For purposes of summary judgment, Defendant does not rely on Dr. Ugone's report or otherwise suggest that the $61,099.51 setoff is required. Even considering this alleged provision in the Factoring Agreement, it does not create an issue of fact since any contractual obligation be-

tween Plaintiff and Homeland does not reduce Plaintiff's damages. *See Brookridge*, 2007 WL 1834175, at *6 (holding that the factoring agreement between the third-party vendor and the factor was immaterial to the factor's damage award of the full face value of the invoices, even if the agreement provided that the factor would not be entitled to keep the full face value of the invoices).

7. In the alternative to its holding in Part III.B that the defense of setoff lacks factual and legal support, the Court concludes that Defendant waived that defense.

interest was "free and clear of any defense, setoff or counterclaim"). By electing not to respond to Plaintiff's arguments regarding mutual mistake, unconscionability, statute of limitations, laches, waiver and mitigation, Defendant necessarily fails to create a genuine issue of fact as to these issues, and summary judgment in Plaintiff's favor is proper.

## IV. PLAINTIFF'S DAUBERT MOTION

In its *Daubert* motion,[8] Plaintiff seeks to exclude the testimony of Defendant's damages expert, Dr. Ugone. (Doc. No. 58.) Dr. Ugone opines that Plaintiff's $610,995.09 damages claim should be reduced by (1) a setoff in the amount of $263,380, representing the sum paid to Plaintiff by Homeland and (2) a setoff in the amount $61,099.51, representing 10% of the face value of the 35 fraudulent invoices, which Plaintiff purportedly held in reserve for Homeland pursuant to the Factoring Agreement. (Doc. No. 58–2.) Defendant did not rely on Dr. Ugone's report for purposes of summary judgment, and in light of the Court's ruling in favor of Plaintiff, Plaintiff's *Daubert* motion is moot.

▮ In the alternative, the Court finds that Dr. Ugone's opinion does not withstand scrutiny under *Daubert*. When applying *Daubert*, the Eleventh Circuit has held that a court may admit into evidence expert testimony if "(1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in

*Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (footnote omitted). Dr. Ugone's calculation involves three undisputed figures: the face value of the fraudulent invoices, the amount repaid by Homeland, and 10% of the face value of the fraudulent invoices. Based on the facts of this case, Dr. Ugone's simple arithmetic calculation is not beyond the understanding of the average lay person and therefore would not help the trier of fact. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005). Additionally, as discussed above, Dr. Ugone's opinion that these setoffs should reduce the face value of the fraudulent invoices lacks factual support and does not comport with the proper measure of damages. *See Coquina Invs. v. Rothstein*, No. 10–60786–Civ, 2011 WL 4949191, at *7 (S.D.Fla. Oct. 18, 2011) (holding that an expert opinion which contains unsupported conclusions and does not apply a recognized measure of damages is unreliable). Accordingly, if not moot, Dr. Ugone's opinions are barred by *Daubert*.

## V. MOTIONS IN LIMINE

Plaintiff and Defendant both filed motions in limine. In its motion in limine, Plaintiff moves to exclude three categories of evidence: parol evidence of Gangler and Turja's precontractual discussion, evidence of the two setoffs identified by Dr. Ugone, and evidence of Homeland's fraud.

---

8.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

(*See* Doc. No. 59.) The Court resolved these substantive issues on summary judgment. *See Royal Indem. Co. v. Liberty Mut. Fire. Ins. Co.*, No. 07–80172–CIV, 2008 WL 2323900, at *1 (S.D.Fla. June 5, 2008) (noting that a motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried). The Court need not revisit its analysis and denies Plaintiff's motion as moot. Finally, the issues remaining to be decided in Defendant's motion in limine concern the manner in which parties can refer to the evidence and use deposition testimony at trial. Thus, Defendant's motion in limine is also now moot.[9] (*See* Doc. No. 60.)

## VI. CONCLUSION

Based on the foregoing, it is **OR-DERED** as follows:

1. Plaintiff LSQ Funding Group, L.C.'s Motion for Summary Judgment (Doc. No. 47), filed on April 2, 2012, is **GRANTED.**

2. Defendant EDS Field Services' Motion for Summary Judgment (Doc. No. 49), filed on April 2, 2012, is **DENIED.**

3. Plaintiff LSQ Funding Group, L.C.'s Motion to Strike and Exclude Proposed Expert Testimony of Keith R. Ugone (Doc. No. 58), filed on April 19, 2012, is **DENIED AS MOOT.**

4. Plaintiff LSQ Funding Group, L.C. Motion in Limine (Doc. No. 59), filed on April 19, 2012, is **DENIED AS MOOT.**

5. Defendant EDS Field Services' Motion in Limine (Doc. No. 60), filed on April 19, 2012, is **DENIED AS MOOT.**

6. On or before July 23, 2012, Plaintiff shall file a memorandum and supporting materials, if necessary, addressing attorney's fees and the total amount of prejudgment interest due. Defendant may respond to Plaintiff's memorandum on or before August 6, 2012. The issues of prejudgment interest and attorney's fees are referred to the assigned United States Magistrate Judge for issuance of a report and recommendation.

7. The Court will withhold entry of judgment pending a determination of prejudgment interest and attorney's fees.

---

9. After reviewing the substance of the parties' motions in limine, the Court finds that nothing therein would alter its rulings on summary judgment.